THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JAMES BERRY, Defendant-Appellant.

First District (3rd Division)   No. 85—314

Opinion filed June 29, 1988.

Steven Clark, Nancy G. Abrahams, and Jamie Kittel, all of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Mary Ellen Dienes, and Cary Davis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

This appeal involves the second of two jury trials which defendant, James Berry, had with respect to this matter. In the first trial, defendant was found guilty of murder and armed violence and sentenced to a term of 30 years in the Illinois Department of Corrections. On appeal, we reversed and remanded because (1) the trial court failed to give Illinois Pattern Jury Instructions, Criminal, No. 25.05 (1968) (hereinafter IPI Criminal) to the jury and (2) defendant was denied effective assistance of counsel. (*People v. Berry* (1982), 111 Ill. App. 3d 487, 444 N.E.2d 593.) The Illinois Supreme Court affirmed the judgment of the appellate court because of the trial court's failure to give IPI Criminal No. 25.05, but the court did not address the other issues that had been raised by defendant. (*People v. Berry* (1984), 99 Ill. 2d 499, 460 N.E.2d 742.) In the second trial, defendant was convicted of murder and sentenced to a term of 25 years. On appeal, defendant contends that: (1) his constitutional rights to testify and to present a defense were violated by his trial counsel's refusal to permit him to testify; (2) the trial court erred in refusing to admit into evidence defendant's post-arrest statements to the police; and (3) the trial court erred in refusing to instruct the jury on voluntary manslaughter resulting from serious provocation. We affirm.

On the evening of September 13, 1978, defendant went to the apartment of Gertrude Hollie in Chicago. He was there less than one hour when a friend arrived. Shortly thereafter, he and his friend went on the porch just outside the apartment. While defendant was on the porch, Richard Spaulding, who lived in the apartment with Gertrude Hollie, entered the apartment. Billy Hollie, Gertrude Hollie's brother, was also in the apartment.

A short time after Spaulding entered the apartment, defendant returned. Spaulding told defendant, "You sold me some bad Marijuana, and I don't want you at my house," or "I don't want you speaking to me anymore." The two men argued for 15 to 20 seconds. Defendant told Spaulding that he would not return the $5 Spaulding paid for the marijuana. Spaulding raised a clenched fist to strike defendant. Gertrude Hollie stepped between the two men and pushed Spaulding away from defendant and into the kitchen, a distance of three or four feet. Defendant then reached into his waistband, withdrew a gun, cocked it, aimed and fired at Spaulding. The bullet hit Spaulding in the chest and killed him. Defendant was approximately 8 to 10 feet from Spaulding when he shot him. Spaulding did not have anything in his hands at the time.

Defendant cocked the gun again and aimed it into the kitchen.

Billy Hollie then grabbed defendant's hand, causing the gun to be pointed upward, and a second shot was fired in an upward direction. Billy Hollie and defendant struggled. Billy Hollie pushed defendant out the door and locked it. Defendant left the scene.

The shooting incident occurred between approximately 10:30 and 11 p.m. At 2 a.m., Detective James Minogue went to defendant's apartment. Defendant identified himself and said, "I am the one you are looking for; I did it. I shot him. Let's go to the police station." Defendant was then placed under arrest and given *Miranda* warnings. At 2:30 a.m. and at 4 a.m., while he was at the police station, defendant voluntarily gave two oral statements to the police in which he stated that Spaulding pulled a gun on him first and then defendant shot Spaulding in self-defense as Spaulding was turning to shoot him. Later, at 6:15 a.m., defendant voluntarily gave a written statement to the police in which he stated that at the time of the incident, he was carrying a gun on his right side inside his pants, covered by his shirt; he and Spaulding argued over some "bad reefer" and Spaulding told him he was going to shoot him. Gertrude Hollie then pushed Spaulding back and told Spaulding not to do it. Spaulding, however, turned around and pointed a pistol at defendant, and he then pulled out his gun, cocked it, and pointed it at Spaulding. The gun went off, and while defendant and Billy Hollie were wrestling, the gun went off a second time. Contrary to defendant's post-arrest statements to the police, the evidence is that Spaulding did not have a gun.

At trial, defendant did not testify. Detective Minogue testified as to his investigation and defendant's prearrest statement. However, on direct examination Minogue was not questioned as to the oral and written post-arrest statements that defendant had given at the police station (the post-arrest statements). On cross-examination, and later on direct examination, defendant was precluded from questioning Minogue as to the post-arrest statements.

Although defendant was represented by counsel at trial, he filed a *pro se* motion for a new trial. In his motion, defendant claimed for the first time that "his constitutional rights to testify and to present a defense were violated by trial counsel's refusal to permit him to testify." Defendant claimed that without his testimony, his claim of self-defense had no evidentiary support and that, therefore, he had ineffective assistance of counsel. Defendant makes the same claims for his first point on appeal.

The record shows that at the hearing on the motion for a new trial, defendant introduced no evidence that he had asserted or indicated a desire to testify at trial, or that his attorney had refused to

allow him to testify. The trial judge asked defendant if he wished to submit any evidence with regard to his motion, and defendant declined. The trial judge stated: "Mr. Berry, do you care to submit anything to your motion, with reference to the motion for a new trial?" Defendant responded: "I don't want to argue. I will let it stand."

■■ ■ When a defendant insists upon testifying at trial and his counsel refuses to allow him to testify on the basis of trial strategy or otherwise, counsel must accede no matter how irrational defendant's insistence to testify may appear. (*United States v. Curtis* (7th Cir. 1984), 742 F.2d 1070, 1074.) However, that is not what occurred here. In the present case, defendant did not give any indication to either the trial court or defense counsel that he wanted to testify until after the jury found him guilty. As a result, we conclude that defendant's failure to testify was a matter of trial strategy with which he agreed. Moreover, defendant's failure to testify does not demonstrate that he had ineffective assistance of counsel. Whether a defendant testifies in a criminal case is trial strategy. Merely because the trial strategy proves to be improvident does not mean that defendant did not have effective assistance of counsel. We find no merit in defendant's contentions.

Defendant's second point on appeal is that the "trial court erred in refusing to admit into evidence Berry's post-arrest statements to the police." Defendant argues that the post-arrest statements were admissible as admissions, declarations against interest or as a state of mind exception to the hearsay rule.

■■ Plainly, the post-arrest statements were not admissible as admissions because they were not offered by defendant against a party, but rather, they were offered to support defendant's own position. (E. Cleary, McCormick on Evidence 774 (3d ed. 1984); Fed. R. Evid. 801(d)(2).) If an out-of-court statement is not offered against a party, it is not admissible under the guise of an admission. Defendant's argument that his post-arrest statements were admissible as admissions when offered by him is untenable.

■■ Defendant's argument that his post-arrest statements were admissible as declarations against interest is equally untenable. Although occasional judicial opinions fail to distinguish this exception to the hearsay rule from admissions, there is a clear line between the two evidentiary principles. While admissions relate to statements of a party, declarations against interest relate to statements of a nonparty. Here, since defendant's post-arrest statements were not made by a nonparty, they were not admissible as declarations against interest. Moreover, the exculpatory aspects of defendant's post-arrest statements were not offered by defendant as declarations against interest,

but rather, they were offered to support defendant's own position.

█ As to defendant's argument that his post-arrest statements were admissible as a state of mind exception to the hearsay rule, the State initially counters that the statements were not admissible because they were self-serving. The notion that a party's out-of-court statements could not be evidence in his favor because of their self-serving nature apparently originated as an accompaniment of the now universally discarded rule forbidding parties to testify. When this rule of disqualification for interest was abrogated, any sweeping rule of inadmissibility regarding self-serving statements should have been abolished by implication. (E. Cleary, McCormick on Evidence 837 (3d ed. 1984).) We regard the objection that a statement is not admissible because it is self-serving as being abolished in Illinois. This puts Illinois in line with other jurisdictions and in accord with recognized authorities in the field of evidence. See *United States v. Dellinger* (7th Cir. 1972), 472 F.2d 340, 380-82.

█ We therefore agree with defendant that a statement of the declarant's then-existing state of mind is not excluded by the hearsay rule even though the declarant is available as a witness, and even though the statement may serve to benefit the declarant. (*People v. Reddock* (1973), 13 Ill. App. 3d 296, 303-05, 300 N.E.2d 31, 37-38; Fed. R. Evid. 803(3).) In order for such a statement to be admissible, however, the statement must purport to relate to a condition of mind existing at the time of the statement and must have been made under circumstances indicating apparent sincerity. Although it is required that the statement describe a state of mind existing at the time of the statement, the evidentiary effect of the statement is broadened by the notion of the continuity in time of states of mind. Since the duration of states of mind or emotion vary with the particular attitudes or feelings at issue and with the cause, it is reasonable to require as a condition of invoking the continuity notion that the statement mirror a state of mind which, in light of all the circumstances including proximity in time, has a probability of being the same condition existing at the material time. (See E. Cleary, McCormick on Evidence 844 (3d ed. 1984).) The likelihood of deliberate or conscious misrepresentation must be negatived. (See Fed. R. Evid. 803, Advisory Committee's Note, exceptions (1) through (3).) Where there is room for doubt, the admissibility of the statement should be left to the discretion of the trial court. (See *People v. Kimbrough* (1985), 138 Ill. App. 3d 481, 490, 485 N.E.2d 1292, 1299.) The principles relating to the admissibility of a statement of the declarant's then-existing state of mind as an exception to the hearsay rule apply equally to criminal and civil cases.

*People v. Reddock* (1973), 13 Ill. App. 3d 296, 303-05, 300 N.E.2d 31, 37-38; see generally examples in Fed. R. Evid. 803, Advisory Committee's Note.

█ In the present case, the post-arrest statements were made four hours after defendant shot a man, and after defendant had left the scene and been arrested for the offense. Moreover, according to defendant, the post-arrest statements to the police were, in part, exculpatory. Under the circumstances, when we invoke the continuity notion test that the statement mirror a state of mind which, in light of all the circumstances including proximity in time, has a probability of being the same condition existing at the material time, we believe that the post-arrest statements were not admissible to show defendant's then-existing state of mind. The likelihood of deliberate or conscious misrepresentation is not negatived by the facts and circumstances. We therefore conclude that the trial court did not abuse its discretion in refusing to admit the post-arrest statements as statements of defendant's then-existing state of mind.

█ Defendant also contends that the trial court's ruling which excluded the post-arrest statements violated his constitutional right not to testify because it, in effect, penalized him for choosing not to testify. We find no merit to defendant's contention since the trial court's ruling on the admissibility of the offered evidence was proper. We believe that the trial court's ruling left defendant in the same position as any defendant in a criminal case. A defendant must make a choice as to whether he wishes to testify or rely on the proposition that the State may not be able to prove him guilty beyond a reasonable doubt without his testimony, Here, since the record evinces that defendant made his choice freely, he has no cause to complain.

█ In his next point, defendant argues that the trial court erred "in refusing to instruct the jury on voluntary manslaughter resulting from serious provocation." Defendant was charged with the offenses of murder and voluntary manslaughter. The State tendered and the court accepted jury instructions on murder, IPI Criminal, Nos. 7.01 and 7.02 (2d ed. 1981) (IPI Criminal 2d); voluntary manslaughter, IPI Criminal 2d Nos. 7.05 and 7.06; and self-defense or the justifiable use of deadly force, IPI Criminal 2d Nos. 24 and 25.06. The State's voluntary manslaughter instructions addressed only the unreasonable belief in justification component of voluntary manslaughter. Defendant tendered but the court refused to give an instruction on a killing in the heat of passion resulting from serious provocation. IPI Criminal 2d Nos. 7.03, 7.04.

Defendant "does not contend that he and Spaulding engaged in

mutual combat or that Spaulding inflicted physical injury upon him," but he does argue that "the mutual quarrel between them reached the level of serious provocation." We disagree. We believe that the evidence falls far short of the serious provocation required to reduce murder to voluntary manslaughter. Serious provocation is conduct sufficient to excite an intense passion in a reasonable person. (*People v. Austin* (1988), 170 Ill. App. 3d 1047, 1049.) The test is objective, not subjective. The question to be asked is whether there existed such provocation as would have caused an ordinary person with the requisite state of mind to react as defendant did under the same circumstances. Barring other significant facts, a mere attempt of the deceased to strike defendant with his fist would not justify defendant to respond with a deadly weapon or reduce the grade of the homicide to voluntary manslaughter. (*People v. Matthews* (1974), 21 Ill. App. 3d 249, 252, 314 N.E.2d 15, 18.) Here, there are no other significant facts. Defendant's request for submission of a voluntary manslaughter instruction dealing with a killing in the heat of passion resulting from serious provocation was therefore properly denied.

Accordingly, the judgment from which this appeal is taken is affirmed.

Affirmed.

McNAMARA and FREEMAN, JJ., concur.