HORACE MANN INSURANCE COMPANY, Plaintiff-Appellee, v. ROBERT H. BROWN *et al.*, Defendants-Appellants.

First District (1st Division)   No. 1—91—0061

Opinion filed October 13, 1992.

458

William E. Reynolds, of Chicago (Timothy Quinn, of counsel), for appellants.

Hinshaw & Culbertson, of Chicago (Joshua G. Vincent and Keith G. Carlson, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

On December 6, 1985, a car driven by defendant Robert Brown collided with another automobile on Lake Shore Drive in Chicago. As a result of the accident, a passenger in the other car, Robert Ring, was killed, and the car's two other occupants, Frank Navarro and Kathy Vasilakos, received injuries. At the time of the collision, the car which Robert was driving was owned by Robert's father, Hamilton, and was insured under an automobile insurance policy issued by plaintiff, Horace Mann Insurance Company.

Representatives of Ring, along with Vasilakos and Navarro, also defendants in this action, subsequently submitted claims to plaintiff and filed a civil suit in the circuit court for damages arising from Robert's operation of Hamilton's car. Plaintiff denied that Robert was covered under Hamilton's policy because Robert had taken the car without Hamilton's permission and because Robert did not live with Hamilton.[1] To that end, plaintiff instituted a declaratory judgment action against defendants in the circuit court. Defendants denied the allegations, and the circuit court conducted a trial on the coverage is-

---

[1]Under the terms of the policy issued to Hamilton, the use of the insured vehicle "must be within the scope of consent by the owner or person in lawful possession of it." "Relative" was defined by the terms of the policy as "a person related to you [the insured] by blood, marriage or adoption who lives with you [the insured]."

sue, where it ultimately determined that plaintiff was not obligated, under the terms of an automobile insurance policy issued by it, to defend Robert in the lawsuit arising from the accident. Defendants appeal.

We affirm.

At the trial, Hamilton testified that he resided at 8619 South Creiger, in Chicago. Robert, his adopted son, had lived there with his parents until approximately 1982. Robert visited his parents on a monthly basis and usually remained only for dinner. He seldom stayed overnight at the house.

On the evening of December 5, 1985, Robert visited his parents' home and stayed there for approximately three hours. Hamilton never saw Robert leave the house. He first noticed that Robert was gone when he discovered that the back door was unlocked and that the car was missing. He checked his jacket pocket for the car keys. They, too, had disappeared. Hamilton never, at any time during the evening, gave Robert permission to take the car.

Later in the early morning hours of December 6, 1985, two police officers came to the house and informed Hamilton that his automobile was involved in an accident. Still later that morning, Hamilton received a telephone call from a police officer regarding the accident. He denied telling the officer anything about Robert nor did he report his car as having been stolen. Hamilton did not recall receiving any other calls from police that morning. He denied telling police that he had allowed Robert to use the automobile and that Robert had "not yet returned home." Hamilton did not call police to report the car stolen because he did not want Robert "to get into trouble just for that." He stated that he believed Robert would return the car "at least sometime that night."

On December 11, 1985, Hamilton submitted a claim for property damage to plaintiff. The property loss form, signed by both Robert and Hamilton, was submitted into evidence by defendants. On the form, Hamilton had noted that Robert had taken the car for "pleasure." He also had checked the box which indicated that Robert's address was the "same as owner." Hamilton explained that he had checked that box because he wanted any mail regarding the accident to be sent to his house and because he did not know where Robert was living at the time.

Defendants also presented the testimony of Chicago police officer Ralph Wesolek, in the form of his deposition transcript. In the deposition, Wesolek, reading from his police report of the incident, stated that he investigated the accident at issue with his partner, William

Smith. According to Wesolek, either he or Smith conducted a telephone interview with Hamilton in which Hamilton stated that Robert had permission to use the car and that he had not yet returned home. Wesolek could not recall who had spoken to Hamilton. Wesolek stated that he typed the report in question with the aid of his partner.

Chicago police officer William Smith's deposition testimony mirrored Wesolek's. Smith was also unable to recall who had spoken to Hamilton. During the investigation, Smith took handwritten notes, which were later transcribed onto the report at issue. Smith stated that, at times, he would have to interpret the handwritten notes for the transcriber. He did not know who had transcribed his notes in the Brown investigation.

Plaintiff objected to the use of the deposition testimony to introduce the contents of the police report. The circuit court admitted the testimony for purposes of impeachment, but refused to admit the testimony as substantive evidence. Specifically, the court noted that the past recollection recorded exception to the hearsay rule requires that the declarant have personal knowledge of the contents of the report. The officers had no personal knowledge of Robert's use of the automobile or his place of residence and had to rely solely on the statement of Hamilton Brown. Moreover, the court noted, there was no showing as to how the person who made the report gathered the hearsay information, which could have been passed from one officer to the other since neither officer knew who actually had spoken to Hamilton on the phone.

Finally, Chicago police officer Arthur Godfrey testified on behalf on defendants. Godfrey was assigned to investigate the accident after police learned a suspect had turned himself in at a third district police station. Godfrey stated that during his interview with Robert, Robert admitted leaving the scene of the accident. Godfrey asked Robert standard "booking" questions such as name, height, weight, date of birth, and address. Godfrey stated that, normally, this type of information is obtained from a suspect's driver's license, but since Robert did not have a driver's license, Godfrey had to elicit the information from Robert himself. In response to his questions, Robert told Godfrey his address was 8619 South Creiger. Godfrey, however, had no personal knowledge of where Robert lived prior to the accident and did not conduct any follow-up investigation to confirm the address.

At the conclusion of Godfrey's testimony, the circuit court struck the evidence, ruling that it could not be used as a declaration against plaintiff because the statement was not made by any agent of plaintiff. The court further ruled that any statement by Robert as to his

address was not part of his inculpatory speech. The court also ruled that Godfrey's testimony lacked the requisite indicia of reliability and could not be admitted as substantive evidence and the testimony as to Robert's statements could not be used to impeach Hamilton.

Following closing arguments, the circuit court determined that Robert did not live with Hamilton at the time of the accident and that Hamilton did not give his son permission to use the car. The court accepted Hamilton's reasons for not reporting his car as stolen to the police and believed that those reasons were adequate to explain away any contradictory statements which may have been given to the police. Accordingly, the court entered judgment for plaintiff on both counts of its complaint for declaratory judgment.

I

Defendants assert that Hamilton's statement to police that Robert had taken the car with his permission and had not yet returned home should have been admitted as substantive evidence as "state of mind" and "past recollection recorded" exceptions to the hearsay rule.

Hearsay evidence is an out-of-court statement offered to prove the truth of the matter asserted and is inadmissible unless it falls within one of the recognized exceptions to the rule. (*People v. Lawler* (1991), 142 Ill. 2d 548, 568 N.E.2d 895.) We first note that the evidence defendants seek to have admitted constitutes double hearsay since Hamilton's out-of-court statement is contained in a police report. In such a case, both levels must fall within an exception to the hearsay rule in order to be used as substantive evidence. (See *People v. Chambers* (1989), 179 Ill. App. 3d 565, 534 N.E.2d 554; M. Graham, Cleary & Graham's Handbook of Illinois Evidence §805.1 (5th ed. 1990).) We further note that defendants did not argue that Hamilton's statement to police was admissible as a state of mind exception to the hearsay rule in the circuit court. Generally, the proponent of excluded testimony is limited on appeal to the grounds for admissibility raised in the circuit court. (*Crimp v. First Union Trust & Savings Bank* (1933), 352 Ill. 93, 185 N.E. 179; *Waechter v. Carson Pirie Scott & Co.* (1988), 170 Ill. App. 3d 370, 523 N.E.2d 1348, *appeal denied* (1988), 122 Ill. 2d 595, 530 N.E.2d 266; *Light v. Steward* (1984), 128 Ill. App. 3d 587, 470 N.E.2d 1180.) Accordingly, defendants are precluded from arguing that the exception should be applied in the present case.

■ Even if we were to assume that defendants properly preserved their argument, the exception is not satisfied under the facts at issue. Generally, an out-of-court statement of a declarant is admissi-

ble when that statement tends to show the declarant's state of mind at the time of the utterance. (*People v. Lawler*, 142 Ill. 2d at 559; *People v. Britz* (1986), 112 Ill. 2d 314, 493 N.E.2d 575.) A statement qualifies under the state of mind exception to the hearsay rule when it purports to relate to a condition of mind existing at the time the statement is made and when it was made under circumstances indicating apparent sincerity. (*People v. Berry* (1988), 172 Ill. App. 3d 256, 526 N.E.2d 502.) The likelihood of conscious or deliberate misrepresentation must be negated. (*People v. Berry*, 172 Ill. App. 3d at 262.) Finally, the circuit court is given discretion concerning questions regarding admissibility and, upon review, its decision will not be disturbed absent abuse of that discretion. *People v. Kimbrough* (1985), 138 Ill. App. 3d 481, 485 N.E.2d 1292, *appeal denied* (1986), 111 Ill. 2d 575, 488 N.E.2d 272.

Here, Hamilton's statement does not relate to a condition of mind. Moreover, the likelihood of conscious or deliberate misrepresentation was not negated given Hamilton's determination not to "get" Robert in "trouble" with police for taking the car without permission. Under these circumstances, the state of mind exception is not satisfied.

■ As to the second level of hearsay present here, the police report, such documents usually are not admissible as evidence. (*People v. Garrett* (1991), 216 Ill. App. 3d 348, 576 N.E.2d 331.) Police reports may be used to refresh a witness' recollection (*Baumgartner v. Ziessow* (1988), 169 Ill. App. 3d 647, 523 N.E.2d 1010) or may be admitted as past recollection recorded if the proper foundation is laid. (*People v. Garrett*, 216 Ill. App. 3d at 357.) In order to be admissible, the proponent must establish that the witness has no independent recollection of the event or occurrence recorded, that the report fails to refresh the witness' recollection, that the facts in the report have been recorded at the time of the occurrence or soon thereafter, and that the report is both truthful and accurate. *Loughnane v. City of Chicago* (1989), 188 Ill. App. 3d 1078, 545 N.E.2d 150, *appeal denied* (1990), 129 Ill. 2d 564, 550 N.E.2d 557.

Our review of the record indicates that the police report was not used to refresh Wesolek's memory, but was read by him into evidence. Although Wesolek averred that his report refreshed his recollection, his testimony clearly shows that he had no recollection of the event. See *Rigor v. Howard Liquors, Inc.* (1973), 10 Ill. App. 3d 1004, 295 N.E.2d 491.

Moreover, the testimony reveals that, as to Wesolek, defendants failed to lay a proper foundation for the admission of the police report

into evidence as past recollection recorded. Wesolek averred that the report refreshed his recollection of the events. As noted above, police reports are admissible as past recollection recorded when the proponent establishes that the report fails to refresh the witness' recollection. Accordingly, the decision to bar the statement, as to Wesolek, was not erroneous.

Additionally, Smith averred that the report refreshed his memory, but neither he nor Wesolek could remember who had spoken to Hamilton. The report's accuracy, therefore, is open to question particularly because neither officer could state with any certainty who had spoken to Hamilton. In view of these facts, the circuit court correctly ruled that the police report constituted inadmissible hearsay. See *Roeseke v. Pryor* (1987), 152 Ill. App. 3d 771, 504 N.E.2d 927.

II

Defendants next maintain that Robert's statement to Officer Godfrey, that he resided at 8619 South Creiger, was a declaration against interest.

The requirements for admissibility for this exception are that the declarant be unavailable, that the declaration, when made, must have been against his pecuniary or proprietary interest, that the declarant have had competent knowledge of the fact declared, and that the declarant have had no probable motive to lie. *Buckley v. Cronkhite* (1979), 74 Ill. App. 3d 487, 393 N.E.2d 60; *Merritt v. Chonowski* (1978), 58 Ill. App. 3d 192, 373 N.E.2d 1060.

■ It appears that both parties agree that Robert possessed competent knowledge of his address; however, the parties disagree as to whether he was unavailable. We need not address that issue because we find that the other requirements for admission under this exception were not met. Robert's statement that he resided at 8619 South Creiger was not against his pecuniary interest because, if true, he would be entitled to coverage for damages arising from the collision under Hamilton's insurance policy. Under these circumstances, it is difficult to conceive of a more powerful motive to lie.

Defendants nevertheless contend that Robert's confession to police was against his pecuniary interest and that the collateral information received at that time, the address, is admissible. However, Robert admitted his participation in the accident in a different interview and at a different time and place from where he told police his address. Although collateral statements substantially connected with the same subject as that covered by the declaration against interest are admissible (*Buckley*, 74 Ill. App. 3d at 492), the record clearly

shows that Robert's statement concerning his address was not collateral to his admission of guilt. Robert initially told Godfrey that he left the scene of the accident to seek medical assistance. After Godfrey pointed out several inconsistencies in Robert's account, Robert terminated the interview and refused to answer any more questions until his lawyer arrived. Robert later was taken to another police station where he made the statement now at issue. In this context, Robert's motive to lie becomes even stronger because he attempted to lie to the police from the outset of the investigation. Accordingly, the circuit court did not err in barring the admission of Godfrey's testimony.

## III

■ Relying on *People v. Newsome* (1982), 110 Ill. App. 3d 1043, 443 N.E.2d 634, *cert. denied* (1983), 464 U.S. 934, 78 L. Ed. 2d 308, 104 S. Ct. 340, and *People v. Harvey* (1980), 92 Ill. App. 3d 465, 415 N.E.2d 1161, defendants next argue that the circuit court should have allowed Godfrey's testimony for the limited purpose of impeaching Hamilton during surrebuttal.

In both *Newsome* and *Harvey*, testimony by third parties concerning statements made by defendants was ruled admissible to impeach the alibi testimony of defense witnesses. Here, the statement at issue was not an inconsistent statement made by Hamilton, but merely was the self-serving statement of one of the defendants. The admission of such evidence is within the circuit court's discretion, and its exercise of that discretion will not be disturbed on review unless an abuse is shown. (*People v. Harvey*, 92 Ill. App. 3d 465, 415 N.E.2d 1161.) Under the circumstances here, the circuit court did not err in barring the testimony for purposes of Hamilton's impeachment.

## IV

Finally, defendants claim error in the circuit court's denial of their motions for judgment *n.o.v.* or for a new trial.

A motion for a new trial is addressed to the sound discretion of the circuit court, and its decision will not be disturbed absent a clear abuse of discretion. (*Netzel v. United Parcel Service, Inc.* (1989), 181 Ill. App. 3d 808, 537 N.E.2d 1348, *appeal denied* (1989), 127 Ill. 2d 620, 545 N.E.2d 114.) In considering such a motion, the circuit court must determine whether the trier of fact's verdict was against the manifest weight of the evidence. (*Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 356 N.E.2d 32.) A verdict is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the findings are unreasonable, arbitrary, and not based upon the evi-

dence. (*Anderson v. Beers* (1979), 74 Ill. App. 3d 619, 393 N.E.2d 552.) Upon review, this court may not reconsider the evidence or reassess the witnesses' credibility or demeanor. *Netzel*, 181 Ill. App. 3d at 813.

With respect to a motion for judgment *n.o.v.*, the circuit court may grant such a motion only when all the evidence, viewed in a manner most favorable to the nonmoving party, so overwhelmingly favors the moving party that no contrary verdict could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) A judgment *n.o.v.* is improper where reasonable minds may differ as to the inferences or conclusions to be drawn from the facts presented. (*Lee v. Grand Trunk Western R.R. Co.* (1986), 143 Ill. App. 3d 500, 492 N.E.2d 1364.) Error occurs when judgment *n.o.v.* is granted where the evidence demonstrates a substantial factual dispute, or where the assessment of witnesses' credibility or the resolution of conflicting evidence may determine the outcome. *Lee v. Grand Trunk Western R.R. Co.*, 143 Ill. App. 3d at 509.

■ In the present case, defendants have met neither standard. The trial judge found Hamilton's testimony regarding the residence of his son to be clear and positive. Moreover, the conflict of evidence with regard to the property loss form was resolved in favor of plaintiff. The trial judge further noted that defendants failed to offer any evidence tending to establish a property connection between Robert and the premises. The trial judge's other finding, that Robert had taken Hamilton's car without permission, was also based on what the trial judge characterized as the clear and positive testimony of Hamilton. Again, conflicting testimony was resolved in favor of plaintiff. Here, the trial judge had the opportunity to observe the demeanor of the witnesses while testifying, and his determination regarding the credibility and weight of the testimony must be given deference upon review, absent clear abuse of discretion. (*Silas v. Robinson* (1985), 131 Ill. App. 3d 1058, 477 N.E.2d 4.) Defendants have failed to establish such an abuse of discretion.

The judgment of the circuit court, therefore, is affirmed.

Affirmed.

BUCKLEY, P.J., and MANNING, J., concur.