1-01-1881

FOURTH DIVISION

Filed: 01/31/02

1-01-1881

THE PEOPLE OF THE STATE OF ILLINOIS )  Appeal from the

)  Circuit Court of

Plaintiff-Appellant, )  Cook County

)

v. ) )

KENNETH HANSEN, )  Honorable

)  Mary Ellen Coghlan,

Defendant-Appellee, )  Judge Presiding.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

Following a jury trial in 1995, the defendant, Kenneth Hansen, was convicted of the 1955 murders of 13-year old Robert Peterson, 13-year old John Schuessler, and 11-year old Tony Schuessler and sentenced to not less than 200 years and not more than 300 years in prison.  On direct appeal, this Court, finding that certain evidence had been improperly admitted at trial, reversed the defendant's convictions and remanded the case to the circuit court for a new trial.  
People v. Hansen
, 313 Ill. App. 3d 491, 729 N.E.2d 934 (2000).  On remand, the trial judge denied the State's motions 
in
 
limine
 to admit certain evidence.  The State now appeals the pre-trial evidentiary rulings pursuant to Supreme Court Rule 604(a).  188 Ill. 2d R. 604(a).  For the reasons which follow, we affirm.

The evidence introduced at the defendant's first trial is set forth in detail in our earlier opinion.  
Hansen
, 313 Ill. App. 3d at 491.  We will set forth only as much of that evidence as is necessary for  the resolution of the issues before us.

At the first trial, the parties stipulated that, if called, Malcolm Peterson would testify as follows.  His son Robert was home all morning on October 16, 1955.  The family ate lunch around 1 or 1:30 p.m., and sometime thereafter the Schuessler boys arrived at the Peterson home.  Robert asked his father what movie he thought the boys should see, and Mr. Peterson suggested a movie titled The African Lion, which was playing at the Loop Theater.  The boys "thought that would be good," and Mr. Peterson called the Loop Theater to find out the price of admission and length of the film, which was to run one hour and forty five minutes.  The three boys left the Petersons' house between 3:15 and 3:30 p.m.

The State presented evidence that Robert Peterson entered the Garland building, located at 111 North Wabash Avenue in Chicago, at 6 p.m. on October 16, 1955, and remained there for five minutes.  Ernest Niewiadomski testified that the victims arrived at the Monte Cristo Bowling Alley, located at 3326 West Montrose in Chicago, around 7:30 p.m that same evening.  According to Niewiadomski, the victims told him they had just seen a movie titled The African Lion and had stopped in the bowling alley on their way home.  Niewiadomski further testified that the victims left the bowling alley around 8 p.m., dressed in jeans and baseball jackets.  Around 8:30 or 9 p.m. that night, another witness saw Tony Schuessler and two other boys, who were dressed in jeans and "sports jackets," standing on Milwaukee Avenue, just south of Lawrence Avenue.  Tony Schuessler had his thumb extended as if he were hitchhiking.  Between 9 and 10 p.m. that night, another witness heard two screams coming from the direction of the Idle Hours Stable.  The victims' bodies were discovered two days later in a forest preserve located near the stable.

The State called four witnesses, each of whom testified that the defendant admitted having killed three boys.  The defendant's alleged statements to these witnesses varied somewhat.  The sum of the statements, however, was that the defendant picked up three boys hitchhiking and took them to a stable, where he performed oral sex on one or more of the boys.  When one of the boys threatened to tell either his parents or the police about this, the defendant killed the boys  and dumped their bodies in the forest preserve.  Two witnesses testified that the defendant referred to one or more of the boys as Peterson, and one witness testified that the defendant stated that the stable to which he took the boys was the Idle Hours Stable.  Although one witness testified the defendant admitted the crimes to him in October 1955, the statements to the remaining three witnesses were allegedly made years later. The State also presented evidence that the defendant worked at the Idle Hours Stable around the time of the murders.

In his defense, the defendant presented evidence that he had never worked at the Idle Hours Stable.  He also presented the testimony of Dan Strong, with whom he had served in the military.  Strong testified that the defendant and his wife, Beverly, visited him in Texas in 1955.  Defense counsel showed Strong a number of photographs from that trip in which Strong identified himself, the defendant, and Beverly Hansen.  Strong testified that, to the best of his recollection, the visit took place in October 1955 but that he could not recall the exact dates.  According to Strong, he had been unable to find any photographs or documentation of the trip that contained a date.

Upon remand, the State filed the two motions 
in
 
limine
 at issue in this appeal.  In one of the motions, the State sought a ruling that it would be allowed to introduce evidence that the defendant, who did not intend to present an alibi defense at the second trial, had presented a false alibi at the first trial.  In the second motion, the State sought a ruling that it would be allowed to introduce the  testimony of Bruce and Glen Carter regarding a conversation they had with the victims on October 16, 1955, in which the victims are alleged to have stated that they were going to an ice cream parlor and then were getting a ride to the horse stables from a person named Hansen.  The State argued that such testimony was admissible under the state-of-mind exception to the hearsay rule to establish that the victims acted in accordance with their stated intent.

The trial court heard arguments on various motions 
in
 
limine
, including those at issue here.  At the hearing, the trial court denied the State's motion 
in
 
limine
 to admit evidence of a false alibi and took under advisement the State's motion 
in
 
limine
 to introduce the Carter brothers' testimony regarding their conversation with the victims.  Subsequently, the trial court also denied the latter motion.  Thereafter, the State filed its certificate of substantial impairment and its notice of appeal from both rulings.  188 Ill. 2d R. 604(a); 
People v. Carlton
, 98 Ill. 2d 187, 192, 455 N.E.2d 1385 (1983) ("a certification of impairment must be filed in every case in which the People seek to appeal from a pretrial order suppressing evidence").

Before turning to the merits of the State's appeal, we must determine the applicable standard of review.  As a general rule, a trial court's rulings on a motion 
in
 
limine
 regarding the introduction or exclusion of evidence is reviewed under an abuse of discretion standard.  
People v. Kirchner
, 194 Ill. 2d 502, 539, 743 N.E.2d 94 (2000); 
People v. Childress
, 158 Ill. 2d 275, 296, 633 N.E.2d 635 (1994).  The defendant argues that this is the appropriate standard to be applied here.  The State, however, argues that the “plethora of reviewing court decisions stating that evidentiary rulings will not be disturbed on review absent an abuse of discretion” are of no import because they were decided prior to 
People v. Crane
, 195 Ill. 2d 42, 51-52, 743 N.E.2d 555 (2001), in which, the State asserts, our supreme court settled the question of what standard governs review of trial court rulings on matters involving mixed questions of fact and law.  The State maintains that the admissibility of the evidence at issue here involves mixed questions of law and fact and that, as such, 
Crane
 mandates that, although  we must give the trial court's factual findings deference, we must review its rulings 
de
 
novo
.  The State does not identify the questions of law involved here.  Rather, it simply asserts that the ultimate determination as to the admissibility of the evidence in question, although based on an assessment of facts, involves a legal conclusion.

We cannot agree with the State's assertion that 
Crane
, which involved not an evidentiary ruling but a speedy trial issue, is to be interpreted as requiring 
de
 
novo
 review of evidentiary rulings such as those involved here, i.e. the admissibility of evidence under an exception to the hearsay rule and the admissibility of evidence to establish consciousness of guilt.  Rather, in 
People v. Caffey
, No. 86975 (October 18, 2001), decided after 
Crane
, our supreme court rejected the defendant's argument that it should review 
de
 
novo
 the trial court's exclusion of certain evidence on the grounds that it constituted hearsay.  The 
Caffey
 court noted that:

"The decision whether to admit evidence cannot be made in isolation.  The trial court must consider a number of circumstances that bear on that issue, including questions of reliability and prejudice. [Citation.] In this case, the trial court exercised discretion in making these evidentiary rulings, 
i.e.
, the court based these rulings on the specific circumstances of this case and not on a broadly applicable rule. [Citations.]" 
Caffey
, No. 86975, slip op. at 21.

As our supreme court has acknowledged, however, evidentiary rulings are properly subject to 
de
 
novo
 review in situations where the admissibility of the evidence in question turns upon a question of statutory interpretation or other question of law.  
People v. Williams
, 188 Ill. 2d 365, 369, 721 N.E.2d 539 (1999); 
People v. Hall
, 195 Ill. 2d 1, 21, 743 N.E.2d 126 (2000).  The State contends that we should review the trial court's pre-trial evidentiary rulings 
de
 
novo
 because "the court's assessment of the facts was firmly grounded in errors of law."  We will address the allegations of legal error which the State asserts as to each of the trial court's rulings during our substantive analysis as to the propriety of the respective rulings.  For now, suffice it to say that 
de
 
novo
 review is not merited on this basis.

In a final attempt to obtain 
de
 
novo
 review of the trial court’s rulings, the State contends that such a review is particularly appropriate here because “the legal rules for hearsay exceptions and consciousness of guilt evidence acquire content only through application to facts” and 
de
 
novo
 review would provide “attorneys and lower courts with a defined set of rules.”  Interestingly, the State maintains that “
[d]e
 
novo
 review on this ground need not create a precedent of requiring 
de
 
novo
 review in every case” but that “[o]ccasional 
de
 
novo
 review would suffice to achieve this purpose."  We reject the State's invitation to randomly apply 
de
 
novo
 review to evidentiary rulings.  Accordingly, we will not reverse the trial court's rulings denying the State's motions 
in
 
limine
 absent an abuse of discretion.  A trial court is said to have abused its discretion only when its evidentiary ruling is arbitrary, fanciful, or unreasonable or when no reasonable person could take the court's view.  
People v. Illgen
, 145 Ill. 2d 353, 364, 583 N.E.2d 515 (1991).

We now turn to the State's assertion that the trial court erred in denying its motion 
in
 
limine
 to admit evidence of a false alibi.  The only evidence to which the State referred in its written motion was Strong's testimony from the first trial.  During argument on its motion, though, the State informed the trial court of three additional pieces of evidence it wished to introduce at the defendant's second trial. The first of these is a box of photographic slides from the vacation during which the defendant and his wife visited Strong in Texas.  According to the State, it was from these slides that the photographs shown to Strong at trial were produced.  Written in pencil on the cardboard frames of the slides contained in the box, in addition to a description of the location of and the identities of the persons in the respective slides, is
 the notation "Sep '55."  Further, "Sept '55" is written on the outside of the box.  The State asserted that it had obtained the slides from the defendant's son, Mark Hansen, after the defendant's first trial and that Mark Hansen stated that the handwriting on the box belonged to his mother.  The State also informed the trial court that it wished to introduce the tape of an interview the defendant had given to a reporter sometime after his first trial.  The State asserted that, during the interview, the defendant stated that his wife, Beverly, was mistaken when she dated the slides in question September 1955 and that the trip actually took place in October 1955.  The box of slides is part of the record, but the interview tape is not.

The final item which the State informed the trial court it wished to introduce at the defendant's second trial is a letter from the defendant to Strong, dated September 16, 1994.  That letter is not contained in the record.  The State, however, read a portion of the letter into the record at the hearing on its motion. The following is the relevant portion:

"This is a cry for help from your old friend from Korea, Kenneth Hansen.  The years have gone by and we seem to have fallen out of touch.  I have never forgotten the wonderful time Beverly and I had with you in October of 1955, the trip to Six Flags, Mexico, Corpus Christi, Padre Island, etcetera, and all the rest. * * *  My son Mark is trying to reach you to explain what is happening and hoping you still have some snap shots or momentos of that visit."

In its brief, the State asserts that, during argument on its motion 
in
 
limine
, it also apprised the court that it wished to introduce into evidence the discovery answer in which the defendant stated that he intended to introduce an alibi defense at the first trial and the testimony of agents from the Bureau of Alcohol, Tobacco and Firearms (ATF) who obtained the box of slides from Mark Hansen.  Although the State did mention during argument that the slides were obtained by ATF agents, the record does not bear out the State's assertion that it informed the court that it wished to introduce either the agents' testimony or the defendant's discovery answer.

The State argues that the trial court erred in ruling that it would not be permitted to introduce evidence that the defendant relied upon a false alibi at his first trial.  It correctly asserts that evidence that a defendant attempted to influence the testimony of a witness or to establish a false alibi is admissible to show consciousness of guilt.  See 
People v. Barrow
, 133 Ill. 2d 226, 261, 549 N.E.2d 240 (1989); 
People v. Smith
, 154 Ill. App. 3d 837, 848, 507 N.E.2d 543 (1987); 
People v. Spenard
, 46 Ill. App. 3d 892, 898, 361 N.E.2d 856 (1977).  According to the State, the defendant's September 1994 letter was a request that Strong help the defendant by testifying on his behalf and the defendant's reference to October of 1955 was intended to "coach" Strong as to when the visit occurred. Thus, the State concludes, as the letter was designed to elicit false alibi testimony from Strong, it is admissible to show the defendant's consciousness of guilt.

The trial court gave two reasons for denying the State's motion.  First, the court stated that the relevance of the evidence was questionable given that Strong did not testify that the defendant was in Texas on October 16, 1955, the date upon which the three victims were last seen alive, but only that he believed the defendant was in Texas sometime in October 1955.  Second, the trial court stated that there was no evidence establishing that Strong's testimony that the defendant was in Texas sometime in October 1955 was false.

The State argues that the trial court's reasoning was flawed and was based on a legal misconception that evidence that a defendant attempted to elicit false alibi testimony from a witness is relevant only if the witness actually provides a false alibi.  The State correctly notes that evidence that a defendant has asked a witness to provide false alibi testimony is relevant regardless of whether the witness does so.  See 
Smith
, 154 Ill. App. 3d at 847-48.  Our review of the record reveals that the trial court's conclusion that the evidence purporting to show that the defendant attempted to influence Strong's testimony is irrelevant was based upon its underlying conclusion that Strong's testimony itself was of little relevance at the first trial as it did not establish that the defendant was in Texas on the date the victims disappeared.  We agree with the State that the fact that Strong did not ultimately provide alibi testimony would not render irrelevant evidence that the defendant asked him to do so.  This does not, however, require either that we subject the trial court's ruling on the motion  to 
de
 
novo
 review or that we reverse the ruling.  The fact that the stated reasoning for the trial court's conclusion that the evidence is irrelevant is improper does not mean that the evidence was, in fact, relevant.   On the contrary, we find that the defendant's letter to Strong is not relevant to demonstrate the defendant's consciousness of guilt.  

Although the defendant's letter to Strong contains no overt request that Strong lie on the defendant's behalf, the State asserts that the defendant's reference to"October of 1995" was either an instruction as to when Strong should say the visit occurred or an attempt to plant in Strong's mind the belief that the visit actually took place at that time.  We do not question that a defendant could attempt to influence a witness' testimony through the power of suggestion.  See 
Smith
, 150 Ill. App. 3d 837.  What we find significant in the instant case, however, is that, in his letter to Strong, the defendant did not refer to any specific dates in October, as would be necessary to establish an alibi defense, or even refer to the trip as having taken place in "mid-October".  This calls into question whether the defendant's intent in writing the letter was to solicit false alibi testimony, as the State suggests, or simply to learn whether Strong remembered any information regarding the trip, which information could possibly assist the defendant.

There is, however, a far more compelling basis for our finding that the evidence which the State seeks to introduce to show the defendant's consciousness of guilt is irrelevant.  Simply put, the fact that the defendant may have asked Strong to testify that the defendant visited him in Texas in October 1955 is not relevant to show consciousness of guilt unless the defendant did not, in fact, visit Strong in Texas in October 1955.  To hold otherwise would be to hold that evidence that a defendant asks a witness to testify truthfully, in this case to a fact which does not even establish an alibi, constitutes an admission of guilt.  As the trial court found, there is no concrete evidence establishing that the defendant did not, in fact, visit Strong in Texas sometime in October 1955.  The State asserts that the photographic slides establish that the trip took place in September 1955, rather than October 1955, which fact, in turn, establishes that the defendant did ask Strong to testify falsely.  We cannot agree.  The State's theory rests upon the assumption that the dates written on the photographic slides are accurate.  However, the State cannot offer the slides into evidence to establish that they were taken in September 1955.  The handwriting on the slides, offered for that purpose, constitutes inadmissible hearsay.  
People v. Lawler
, 142 Ill. 2d 548, 557, 568 N.E.2d 895 (1991) (an out-of-court statement offered to prove the truth of the matter asserted is inadmissible unless it falls within an exception to the rule against hearsay); 
People v. Slago
, 58 Ill. App. 3d 1009, 1017, 374 N.E.2d 1270 (1978)(hearsay rule prohibits introduction of oral or written out-of-court statement offered to prove truth of matter asserted).

The State contends that it offers the slides not to establish the truth of the handwritten notations that state "Sep '55" but to show the effect of those notations on the defendant and that, as such, they do not constitute hearsay.  See 
People v. Thomas
, 296 Ill. App. 3d 489, 499, 694 N.E.2d 1068 (1998)(an out-of-court statement offered to show its effect on the listener is not hearsay).  The State maintains that, because the photographs defense counsel showed to Strong during his testimony were produced from the slides, the defendant must have known that the slides contained the notations "Sep '55."  It asserts that it is reasonable to infer that the defendant knew that the slides stated "Sep '55" when he wrote to Strong in September 1994.  Further, the State argues that the fact that the defendant used the photographs, which bore no date, rather than the slides, at his first trial indicates that he knew the notations on the slides were true.  It contends that the fact that the defendant did not show the slides to Strong indicates he wanted Strong to testify falsely.

We cannot agree with the State that the slides are admissible for the nonhearsay purpose of showing their effect on the defendant.  The effect of the notations on the defendant's  mental state is relevant only if the notations are, in fact, true and the defendant believed them to be so.  As stated, though, the slides cannot be offered for the truth of the matter asserted thereon.

We agree with the trial court that there is no evidence that the defendant did not visit Strong in Texas sometime in October 1955.  Accordingly, as there is no evidence that the defendant asked Strong to testify falsely, the State's proffered evidence is inadmissible to establish the defendant's consciousness of guilt.  On appeal, however, the State offers an alternate theory for admissibility, at least with regard to the defendant's 1994 letter to Strong and the statements he made during the taped interview with a reporter that Beverly was mistaken when she dated the slides September 1955.  It argues that any statement made by the defendant, whether inculpatory or exculpatory, is admissible at trial.  
People v. Shaw
, 278 Ill. App. 3d 939, 951, 664 N.E.2d 97 (1996); 
People v. Wesley
, 250 Ill. App. 3d 245, 263, 620 N.E.2d 1335 (1993);  
People v. Smallwood
, 224 Ill. App. 3d 393, 407, 586 N.E.2d 636 (1991).
(footnote: 1)  It is true that the State may use a defendant's unprivileged statement against him in court, whether that statement was inculpatory or exculpatory at the time it was made or used, and that Illinois courts have treated such statements as either nonhearsay or as an exception to the rule prohibiting the use of hearsay evidence. 
People v. Grisset
, 288 Ill. App. 3d 620, 631, 681 N.E.2d 1010 (1997); 
People v. Aguilar
, 265 Ill. App. 3d 105, 110, 637 N.E.2d 1221 (1994).  All evidence, however, is subject to the requirement that it be relevant.  
People v. Ward
, 101 Ill. 2d 443, 455, 463 N.E.2d 696 (1984)(test of admissibility is relevance).  A defendant's out-of-court statement is no different.  See 
Aguilar
, 265 Ill. App. 3d at 113.  Evidence is relevant if it tends to make more or less probable the existence of any fact that is of consequence to the determination of the action.  
Illgen
, 145 Ill. 2d at 365-66.  Standing alone, neither the defendant's September 1994 letter to Strong nor the defendant's statement to the reporter tend to make more or less probable any fact that is of consequence to a determination of the defendant's guilt or innocence.

For the foregoing reasons, the trial court did not abuse its discretion in denying the State's motion to introduce evidence that the defendant presented a false alibi at his first trial.

The State next contends that the trial court erred in denying its motion to admit the Carter brothers' testimony as evidence of the victims' state of mind. At the defendant's first trial, Glen Carter testified that he was 14 years old at the time of the victims' disappearance.  He further testified that he knew Robert Peterson, as they attended the same church and their Boy Scout troops participated in functions together.  Glen Carter testified that he had been to the Idle Hours Stable 10 to 12 times during 1954 and 1955 and that he had seen Peterson there on some of those occasions.   In its motion, the State asserted that, at the defendant's second trial, both Glen Carter and his brother Bruce  would testify that they saw the three victims on October 16, 1955.  The State represented that Bruce Carter would testify that Glen introduced him to the three victims on that date.  Bruce Carter would further testify as follows.  After he and Glen had talked to the victims for a while, Peterson said "We're (meaning the three victims) going to an ice cream parlor on Lawrence and then we're going to get a ride out to the horse stables to ride."  Shortly thereafter, a car passed by and the horn honked, whereupon Tony Schuessler stated, "Is that Hansen?" and John Schuessler replied, "Shut up, because we've said enough already."  The conversation with the victims continued and "the victims said they were going to get a ride to the stables from Hansen."  According to the State, Glen Carter would testify that Peterson stated that he and the Schuessler boys were going to the Idle Hours Stable to ride.  During argument on the motion, the State asserted that the conversation took place around 2 p.m. on October 16, 1955, in an alley near the Carters' house.

The State argued before the trial court that the statements in question were admissible under the state-of-mind exception to the hearsay rule.  The trial court took the motion under advisement, expressing a desire to review Glen Carter's trial testimony and Bruce Carter's grand jury testimony.  Subsequently, the trial court denied the State's motion to admit the victims' statements to the Carter brothers as statements of intent, finding that there was not a reasonable probability that the statements were true.

It is well-settled that an out-of-court statement is admissible under an exception to the hearsay rule when it shows the declarant's state of mind, such as intent, plan, motive, or design.  
People v. Lawler
, 142 Ill. 2d at 559;  
People v. Floyd
, 103 Ill. 2d 541, 546, 470 N.E.2d 293 (1984); Cleary & Graham's Handbook of Illinois Evidence §803.4 (7
th
 ed. 1999).  In support of its argument that the Carter brothers' testimony is admissible, the State relies upon what might be considered a subset of cases within the body of case law dealing with the state-of-mind exception to the hearsay rule.  In particular, it relies upon cases in which a declarant's statement that he intends to go somewhere or to do something is introduced to show that the declarant intended to do as he said, from which, the theory goes, it can be inferred that he actually did so.  See 
Mutual Life Insurance Co. v. Hillmon
, 145 U.S. 285, 295-96, 36 L. Ed. 706, 12 S. Ct. 909, 912-13 (1892); 
People v. Olinger
, 176 Ill. 2d 326, 359, 680 N.E.2d 321 (1997);  
People v. Reddock
, 13 Ill. App. 3d 296, 303-05, 300 N.E.2d 31 (1973); 
People v. Silvestri
, 148 Ill. App. 3d 980, 984-85, 500 N.E.2d 456 (1986); Cleary & Graham's Handbook of Illinois Evidence §803.5 (7
th
 ed. 1999).

Illinois courts have held that, in order for a statement to be admitted pursuant to the state-of-mind exception to the hearsay rule, there must be a reasonable probability that the declarant's statement was true.  
Floyd
, 103 Ill. 2d at 546; 
People v. Berry
, 172 Ill. App. 3d 256, 526 N.E.2d 502 (1988)(statement must have been made under circumstances indicating apparent sincerity); 
People v. Coleman
, 116 Ill. App. 3d 28, 33, 451 N.E.2d 973 (1983).
(footnote: 2)  Further, in order for a declarant's out-of-court statement to be admissible under the state-of-mind exception to the hearsay rule, the declarant's state of mind must be relevant to a material issue in the case.  
Floyd
, 103 Ill. 2d at 546; 
People v. Davis
, 254 Ill. App. 3d 651, 660, 626 N.E.2d 1187 (1993).

We note that, under Illinois law, the declarant's statements of intent are admissible only to establish the declarant’s intent and that the declarant acted in conformity with that stated intent, not to establish the intent or actions of any another person. 
Reddock
, 13 Ill. App. 3d at 305; 
Silvestri
, 148 Ill. App. 3d at 984.  Accordingly, in the instant case, the victims’ statements would be admissible, if at all, only to establish that the victims intended to go to the Idle Hours Stable on October 16, 1955, and actually did go there, but not to establish that the defendant intended to take them there or that he actually did so.

The trial court here determined that there was not a reasonable probability that the victims' statements to the Carter brothers were true, stating the following reasons for its conclusion: 1) the circumstances under which the victims made the statements, i.e. the statements were not made to family, close associates, or neighbors but to two boys the victims encountered on the street, did not indicate apparent sincerity; and 2) the evidence showed that the victims did not actually go to an ice cream parlor and then get a ride to the stables.  The court further stated that "the material time at issue is not 2 p.m. in the afternoon when this conversation allegedly occurred."

The State contends that the trial court erred in finding that there is not a reasonable probability that the victims' statements to Glen and Bruce Carter were trustworthy.  First, it maintains that the trial court's comments indicate that it erroneously believed that, in order to be deemed trustworthy, the declarant's statements must be made to a family member or business associate.  We believe, however, that the State has misinterpreted the court's comments.

When announcing its ruling on the State's motion, the trial court referred to 
People v. Reddock
, 13 Ill. App. 3d 296, 303-05, 300 N.E.2d 31 (1973), in which the court determined that the murder victim's sister was properly allowed to testify that the victim made statements to her expressing an intent to go on a business trip with the defendant. The 
Reddock
 court reasoned that a declarant's statement to a family member or business associate that he is leaving on an out-of-town trip is sufficiently reliable to be admitted into evidence because such a statement " 'has no purpose or significance except to promote the orderly conduct of the declarant's domestic or business affairs' " 
Reddock
, 13 Ill. App. 3d at 304, quoting 
State v. Vestal
, 278 N.C. 561, 180 S.E.2d 755, 773 (1971). After making reference to this passage, the trial court stated:

"The defendant argues that the alleged statements of the victims about their intent to go to a riding stable were not made to the family, close associates or even neighbors; rather, the victims purportedly, made these statements to two boys they ran into on the street.  There was nothing about this encounter which would indicate apparent sincerity."   

The State is correct that a statement need not be made to a family member or business associate of the declarant in order to be admitted pursuant to the state-of-mind exception to the hearsay rule. See 
Silvestri
, 148 Ill. App. 3d 980 (doctor's office receptionist allowed to testify that murder victim stated she was going to 13
th
 floor of building to meet her husband).  We do not, however, agree with the State that the trial court's comments when ruling on the motion indicate that it was laboring under such a misconception.  The 
Reddock
 court held that there is an inherent reliability in a statement made to a family member or business associate regarding an out-of-town trip. The trial court did not state that comments made to other than a family member or business associate could never be considered trustworthy but merely observed that the inherent reliability present under circumstances such as those involved in 
Reddock
 was not present here as the victims made the statements in question to two boys they encountered on the street.

The State also argues that the evidence established that the boys were all friends and, thus, shared a close relationship, thereby establishing the reliability of the victims' statements.  This is a misstatement.  Glen Carter testified at the defendant's first trial that he knew Robert Peterson.  The State alleged in its motion that he would testify to this effect at the second trial.  There was, however, no evidence that Glen Carter was friends with either of the Schuessler boys.  Further, the State acknowledges that Bruce Carter did not know any of the boys prior to October 16, 1955, and was introduced on that date by his brother Glen.

The State also points to 
Silvestri
, where the court held that a receptionist at the murder victim's doctor's office was properly allowed to testify that, upon leaving the office, the victim stated that she was going to the 13
th
 floor of the building to meet her husband.  
Silvestri
, 148 Ill. App. 3d at 984-85.  The State argues that, if the 
Silvestri
 victim's statement to the receptionist, with whom she shared no relationship, was admissible to establish the victim's intent and actions, then the victims' statements to the Carter brothers should be admitted.  In 
Silvestri
, however, there was some independent evidence establishing that the victim acted in conformity with her stated intent as her body was found in the stairwell between the building's 13
th
 and 14
th
 floors.  In the instant case, however, there is no independent evidence suggesting that the victims went to an ice cream parlor and then got a ride to the Idle Hours Stable on the afternoon of October 16, 1955.  To the contrary, as the trial court noted, there is evidence suggesting that the victims did not do so and, further, that they never intended to do so.

As stated above, at the defendant's first trial, the parties stipulated that, if called, Malcolm Peterson would testify that his son, Robert, was home until 3:15 or 3:30 p.m. on October 16, 1955, at which time he left the Peterson house with the Schuessler boys with the stated intention of going to see a movie titled The African Lion at the Loop Theater.  Ernest Niewiadomski saw the victims at the Monte Cristo Bowling Alley around 7:30 p.m., at which time the victims told him that they had just seen a movie titled The African Lion and were on their way home.  We acknowledge that the victims' statements to Malcolm Peterson and Niewiadomski are, in themselves, hearsay
(footnote: 3) and do not definitively establish that the victims actually went to a movie on the afternoon of October 16, 1955, instead of to an ice cream parlor.  There is, however, evidence establishing that Robert Peterson was present in an office building located in Chicago's Loop area for five minutes at 6 p.m. that evening.  At any rate, the very fact that the victims made conflicting statements as to their intended activities on October 16, 1955, calls into question the reasonable probability that their alleged statements to the Carter brothers' were trustworthy.  Furthermore, we note that Malcolm Peterson's testimony that Robert did not leave the house until between 3:15 and 3:30 p.m. on October 16, 1955, calls into question whether the victims even made the statements in question, which were purportedly made to the Carter brothers at 2 p.m.

The State maintains that the victims did not tell the Carter brothers that they were going to the ice cream parlor and the stables immediately and that they could just as easily have meant that they intended to go sometime later that day.  Alternatively, it asserts, it is possible the victims intended to go to the ice cream parlor and stables upon leaving the Carter brothers but that circumstances developed which resulted in them delaying their plans until later in the day.  The State argues that the reliability of the victims' statements that they intended to get a ride to the stables from Hansen is established by the defendant's own admissions that he took the victims to the stable that night and killed them.  The State's argument in this regard is not well-taken.

In its motion 
in
 
limine
, the State asserted that Bruce Carter would testify that, while he and his brother were conversing with the victims, a car drove by and a horn honked, prompting Tony Schuessler to ask, "Is that Hansen?"  Further, the record before us contains a transcript of Bruce Carter's August 1994 grand jury testimony regarding his October 16, 1955, encounter with the victims.  Bruce Carter was asked where the victims said they were going.  He responded, "They were going to – 
when we saw them
 – to an ice cream parlor on Lawrence Avenue.  And then from there to get their ride out to the horse stables."  [Emphasis added].  Accordingly, the State's argument that the victims may have meant that they intended to go to the ice cream parlor and the horse stables, not immediately but, rather, sometime that night is contradicted by the record.  We further note that the State's contention that the victims planned to get a ride to the Idle Hours Stable from Hansen at any time on October 16, 1955, contradicts the other evidence it presented at trial.  The evidence which the State offered at the first trial established that the victims were seen hitchhiking around 8:30 p.m., not something they would have been doing if they were expecting a pre-arranged ride, and that Hansen picked the boys up hitchhiking.  The State presented no evidence that Hansen knew the boys prior to picking them up hitchhiking that night.

We note that, in its brief, the State alternatively argues that the victims' statements are admissible for a non-hearsay purpose, namely to establish that they knew someone named Hansen.  In its motion 
in
 
limine
, however, the State sought only to have the statements admitted for the purpose of establishing that the victims acted in conformity with their stated intent.  It did not seek  admission of the statements for any non-hearsay purpose and, accordingly, we will not consider any argument that the evidence should be admitted for that purpose.

For the foregoing reasons, we find that the trial court did not abuse its discretion in refusing to admit the victims' alleged out-of-court statements pursuant to the state-of-mind exception to the hearsay rule.  See 
Caffey
, No. 86975, slip op. at 24 (holding that out-of-court statement was not admissible under state-of-mind exception where "[t]he record does not disclose any reason to regard the casual conversation among these acquaintances as inherently reliable").

We wish to make clear that a trial court's ruling on a motion 
in
 
limine
 is an interlocutory order  which is subject to review by the trial court any time prior to or during trial.  
People v. Drum
, 321 Ill. App. 3d 1005, 1008, 748 N.E.2d 344 (2001); 
People v. Pertz
, 242 Ill. App. 3d 864, 903, 610 N.E.2d 1321 (1993).  Accordingly, the State is free to ask the trial court to reconsider its ruling on either or both of the motions involved in this appeal if it should discover additional facts or evidence relevant to the admissibility of the evidence in question.

In sum, we affirm the trial court's pre-trial orders denying the State's motions 
in
 
limine
 to permit it to introduce evidence that the defendant presented a false alibi at his first trial and the victims' statements to the Carter brothers under the state-of-mind exception to the hearsay rule.

Affirmed.

HARTMAN and THEIS, JJ., concur.

FOOTNOTES
1: 
The State also asserts that the discovery answer in which the defendant indicated his intent to present an alibi defense at his first trial is admissible on this basis.  As mentioned earlier, however, the record does not bear out the State's assertion that it asked the trial court for permission to introduce the discovery answer into evidence.

2: 
Our supreme court has also stated that the declarant must be unavailable in order for his statement to be admissible under this exception.  
Floyd
, 103 Ill. 2d at 546.  Pursuant to the Federal Rules of Evidence, statements are admissible under the state-of-mind exception even if the declarant is available (Fed. R. Evid. 803(3)), and it has been suggested that this should be the rule in Illinois.  See Cleary & Graham's Handbook of Illinois Evidence §803.4 at 802 (7
th
 ed. 1999);  
People v. Nyberg
, 275 Ill. App. 3d 570, 586, 646 N.E.2d 65 (1995) (Wolfson, J., specially concurring); 
Berry
, 172 Ill. App.3d 256. We need not concern ourselves with this dispute as the declarants here are unavailable.

3: 
At trial, Malcolm Peterson's testimony was introduced by way of stipulation and Niewiadomski's testimony was offered without objection.