ROBERT EWURS, Plaintiff-Appellant, *v.* ROBERT PAKENHAM *et al.,* Defendants-Appellees.

(No. 72-81;

Third District—November 29, 1972.

*Rehearing denied December 30, 1972.*

ALLOY, J., dissenting.

T. Donald Henson, of La Salle, and James Wimbiscus, of Spring Valley, both for appellant.

Andrew O'Conor, of Ottawa, for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The plaintiff, Robert Ewurs, brought an action in La Salle County claiming damages due to battery committed on his person by defendant Robert Pakenham. Robert Pakenham's father, Justin Pakenham, was joined as a defendant on the theory that Robert Pakenham was acting as his agent and employee when he committed the battery. Defendant Robert Pakenham admitted the battery but alleged self-defense as an affirmative defense to the action for damages. Defendant Justice Pakenham denied any liability for his son's actions. A trial was held and the jury found for both defendants.

On appeal the plaintiff asks for reversal on the grounds that the verdict of the jury was contrary to the manifest weight of the evidence. Plaintiff also raises three issues as grounds for granting a new trial, (1) that the jury was improperly instructed by the court as to the law, (2) the defendants' attorney engaged in improper and prejudicial examination of the plaintiff, (3) the trial court improperly permitted the plaintiff to be impeached by means of a felony conviction which was unrelated to his

credibility and too remote in time to support an inference as to his credibility at the time of trial.

The basic pattern of events leading up to the battery is as follows. Some time between 1:00 and 2:00 A.M. on January 1, 1968, the plaintiff and his family experienced car trouble and pulled into the Pakenham Sinclair Station located on U.S. Route 34 in Earlville, Illinois. The station was closed at that time and a pay telephone located in front of the station was inoperative. Plaintiff sent his oldest son in search of assistance and in order to secure shelter and warmth for himself and the remainder of his family he broke into the station and took his family inside. While in the station the plaintiff telephoned for help and reached Mrs. Rose Hamil, who was the mother of the night deputy in Earlville and was babysitting in his home at that time. Mrs. Hamil called the home of Justin Pakenham and spoke to the defendant Robert Pakenham. She informed him that someone had called saying that they had broken into the station and they were asking for help. Defendant Robert Pakenham then went to the station to investigate, taking with him a friend, Craig Barrett, and a loaded 12-gauge shotgun.

At this point there is considerable disagreement in the testimony of the plaintiff and defendant concerning the events immediately preceding the battery. Plaintiff testified that he stepped out of the station when the defendant arrived but was forced back into the station by the defendant. He further testified that he tried for a period of time to get the defendant to put the gun down and was turning to go to the phone to call the sheriff when the defendant discharged the shotgun striking him in the left foot. Defendant Robert Pakenham testified that when he arrived at the station he did not see the plaintiff's car, but observed the glass broken out of the door and plaintiff in the lighted station. When he asked plaintiff what he was doing there the plaintiff cursed him and was abusive and threatened to take the shotgun from him. Defendant Pakenham testified that plaintiff appeared to be intoxicated. Craig Barrett, who had accompanied defendant to the station, also testified to essentially the same thing. Defendant Robert Pakenham further testified that just prior to the shooting the plaintiff made vile threats and advanced toward him. He fired the gun at the floor to warn him to stay away. In spite of the disagreement of the events leading to the battery it is undisputed that (1) defendant Robert Pakenham discharged the shotgun in the general direction of the plaintiff, (2) defendant Robert Pakenham intentionally discharged the shotgun, (3) the plaintiff was struck in the left foot by pellets from the shotgun.

We first direct our attention to the plaintiff's contention that the jury was improperly instructed as to the law of the case. Plaintiff tendered two

alternative instructions relative to the permissible amount of force for self-defense. The first, Plaintiff's Instruction 13, stated:

> "In considering whether or not the defendant used no more force than was reasonably necessary to protect himself, the jury is instructed that a shotgun is a deadly weapon and is a force which is intended or likely to cause death or great bodily harm. A person is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent death or great bodily harm to himself."

The second, Plaintiff's Instruction 17, stated:

> "A person is justified in the use of force which is likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself."

Both of these instructions were refused. In their stead the court accepted and gave to the jury the following instruction, Defendants' Instruction 18:

> "You are instructed that if you believe from the evidence that Robert Pakenham believed that he was threatened with bodily harm by the plaintiff and if you further believe that plaintiff's acts were such as to induce in a reasonable man situated as Robert Pakenham was, a belief that there was an immediate danger of his being injured, Robert Pakenham had the right to use reasonable force to defend himself as appeared to him to be necessary and to be reasonable under the circumstances."

Plaintiff's contention is that by refusing his tendered instructions 13 and 17 and accepting defendant's instruction 18 the court improperly instructed the jury as to the law in the case. Defendants contend that their tendered instruction 18, which was accepted and given to the jury, adequately covers the law of the case. In support of this contention they cite the case of *Irwin v. Omar Bakeries, Inc.*, 48 Ill.App.2d 297, 198 N.E.2d 700. We do not believe that this case is in point since it did not involve the use of deadly force. In the instant case we have the use of a shotgun which is *per se* a deadly weapon (*People v. Carter*, 410 Ill. 462, 102 N.E.2d 312; *People v. Dwyer*, 324 Ill. 363, 155 N.E. 316; *People v. Mastin*, 110 Ill.App.2d 400, 249 N.E.2d 658), and the use of it would be use of deadly force. We believe the correct statement of the law in Illinois concerning the use of deadly force in self-defense can be found codified in the Illinois Criminal Code (Ill. Rev. Stat. 1971, ch. 38, sec. 7—1), which provides in part:

> "However, he is justified in the use of force which is intended or

likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself * * *."

That this same statement of the law would be applicable to civil cases where the circumstances are the same as would give rise to criminal liability is pointed out by the following language from Locher v. Kluga, 97 Ill.App. 518:

"The cases cited above in support of the right to protect life and one's person, are criminal cases, but we see no reason why the rule applied in criminal cases should not apply with equal force to civil liability arising out of the same circumstances, but there is authority in other jurisdictions applying the rule to civil suits."

In the instant case the proper instruction would have been Plaintiff's Instruction 13 which contained reference to the use and status of the shotgun, and to the circumstances when such force could be used. Since the jury was not properly instructed concerning the legal status of the force used or when it was legally permissible to use such deadly force in self-defense the case should be reversed and remanded for a new trial. The plaintiff's request for a reversal on the grounds that the verdict of the jury was contrary to the manifest weight of the evidence is denied. The jury could properly reach the verdict on the instructions given, but justice requires the case be decided on proper instructions, and our holding that the instructions were not proper make this issue moot.

We do not deem it necessary to rule on the other issues presented in this appeal since they are not likely to reoccur during a new trial of the case.

Reversed and remanded.

STOUDER, P. J., concurs.

Mr. JUSTICE ALLOY dissenting:

I do not believe there was reversible error in the refusal of plaintiff's Instructions 13 and 17 and in the giving of defendants' Instruction 18 in this case. Plaintiff's Instructions 13 and 17 emphasized the defendant's use of force likely to cause "death or great bodily harm" only if the defendant reasonably believes that such force is necessary to prevent "death or great bodily harm to himself." Such instructions describe conditions which are unrelated to the facts in the case, where the discharge of the shotgun was obviously into the ground and certainly never aimed in such way as to intentionally cause death or even great bodily harm. Defendants' Instruction 18, which follows the instruction given in Irwin v. Omar. Bakeries, Inc., 48 Ill.App.2d 297, 198 N.E.2d 700, told the jury

that if the defendant believed he was threatened with bodily harm by plaintiff and if plaintiff's acts were such as to induce a reasonable man situated as defendant was to think that there was an immediate danger of his being injured, defendant had the right to use reasonable force to defend himself. While I agree that this is not a wholly satisfactory instruction, particularly when a shotgun is involved, under the circumstances, I do not believe that the refusal of plaintiff's instructions and the giving of defendants' Instruction 18 were errors of sufficient magnitude, in view of the facts in the case and the jury verdict, to justify a reversal.