BENNIE THOMPSON, Plaintiff-Appellee, v. EDWARD PETIT, Defendant-Appellant.

First District (5th Division)   No. 1—97—1714

Opinion filed February 27, 1998.

Schoen & Smith, Ltd., of Chicago (Lee J. Schoen, of counsel), for appellant.

Clifford Law Offices, of Chicago (Robert A. Clifford, Richard F. Burke, and Robert P. Sheridan, of counsel), for appellee.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiff, Bennie Thompson, filed the instant negligence action seeking recovery for damages sustained when he was shot by the defendant, Edward Petit. Although the defendant did not deny shooting the plaintiff, he claimed that he acted in self-defense. The matter was tried before a jury in the circuit court of Cook County resulting in a verdict in favor of the plaintiff. After reducing the plaintiff's total damages by the 25% attributable to his own contributory negligence, the jury assessed the plaintiff's recoverable damages at $2,249,070, and the trial judge entered judgment on the verdict. The defendant filed a posttrial motion seeking the entry of a judgment notwithstanding the verdict or, in the alternative, a new trial. The defendant's posttrial motion was heard and denied by a circuit judge to whom the matter was assigned after the trial judge's retirement from judicial service. Thereafter, the defendant filed a timely notice of appeal both from the judgment entered on the verdict and the denial of his posttrial motion. For the reasons that follow, we affirm.

This action arose from a traffic altercation which occurred on the Stevenson Expressway in Chicago on July 3, 1986. The plaintiff and his coworker, Fred Quillin, were travelling eastbound in the plaintiff's car when they encountered a station wagon driven by the defendant. The events that followed culminated in the plaintiff being shot twice by the defendant. There is no dispute that the defendant shot the plaintiff. The evidence introduced by the parties at trial, however, presented the jury with two conflicting versions of the events leading up to the shooting.

According to the testimony of the plaintiff and Quillin, they were travelling eastbound in the far left lane of the expressway when they were passed by a station wagon being driven by the defendant on the left shoulder of the roadway. After passing the plaintiff's vehicle, the defendant entered the left lane immediately in front of the plaintiff's vehicle, slammed on his brakes, and brought his vehicle to a complete stop. The plaintiff was able to stop without hitting the defendant's

vehicle. The plaintiff exited his car and began walking toward the defendant's vehicle. However, as he reached the rear of the defendant's vehicle, the defendant drove forward a short distance and then stopped. The plaintiff began walking back to his own car when the defendant backed his vehicle toward the plaintiff at 15 to 20 miles per hour, stopping within about four feet of the front of the plaintiff's car. The plaintiff again walked toward the defendant's vehicle, but the defendant sped away.

The plaintiff returned to his car and followed the defendant. When the plaintiff caught up with the defendant, he pulled his vehicle in front of the defendant's and forced the defendant to stop in the left lane of the expressway with the plaintiff's vehicle positioned four to eight feet in front of the defendant's. The plaintiff and Quillin exited the plaintiff's vehicle. At the time they exited the car, the plaintiff was carrying a small bat and Quillin was carrying a long key chain. The plaintiff walked toward the defendant's vehicle. As he reached the rear of his own car, the plaintiff saw that the defendant had a gun. According to the plaintiff, the defendant shot him as he turned to run. After the plaintiff fell to the ground, the defendant approached, stood over him, and shot the plaintiff a second time.

Testifying both as an adverse witness in the plaintiff's case and again in his own defense, the defendant related an entirely different sequence of events. According to the defendant, he was driving eastbound on the Stevenson Expressway in the left lane when the plaintiff, who was driving eastbound in the center lane, struck the passenger door of the defendant's vehicle and then pulled in front of the defendant, compelling him to drive on the shoulder of the roadway to avoid a collision. Thereafter, the defendant pulled in front of the plaintiff's vehicle and stopped, also forcing the plaintiff to stop. The defendant testified that the plaintiff, armed with a bat, and Quillin, carrying a tire iron, exited the plaintiff's car and ran toward the defendant yelling obscenities. The defendant drove his vehicle forward a short distance as they approached. Thereafter, he moved his vehicle in reverse, but ultimately pulled away.

The defendant testified that as he drove eastbound the plaintiff caught up with him, cut in front of his vehicle, slammed on his brakes, and forced the defendant to stop in the left lane of the expressway. According to the defendant, the plaintiff and Quillin again exited the plaintiff's vehicle armed with a bat and a tire iron, respectively. The plaintiff ran toward the defendant's vehicle screaming obscenities. At this time, the defendant stated that he exited his vehicle armed with a .25-caliber pistol that he kept under the front seat. The defendant admitted that he shot the plaintiff, but testified

that he did so believing that the plaintiff was about to hit him with the bat he was carrying. The defendant claimed that, after he fired, he saw two men running toward him, so he ran in the direction of the plaintiff. The plaintiff grabbed his leg and began striking him. According to the defendant, Quillin then threw the tire iron he was holding, hitting the defendant in the right wrist. The blow from the tire iron caused the defendant's gun to discharge, resulting in the plaintiff's second gunshot wound. Thereafter, the defendant laid down his pistol after becoming aware of the presence of David Kurtz, an off-duty Chicago police officer.

Officer Kurtz testified as a witness for the plaintiff. Kurtz stated that he first noticed the parties as they were cutting each other off while driving on the expressway. When they stopped on the roadway, Kurtz also stopped. Kurtz observed the plaintiff and Quillin exit the plaintiff's car. The plaintiff was carrying a small bat and yelling obscenities as he walked toward the defendant's station wagon. At this time, the defendant was still in his vehicle with the driver's door partially open and his left foot on the ground. When the plaintiff was about two feet in front of the defendant's vehicle, Kurtz observed the defendant exit the vehicle, crouch behind the driver's door, extend his arm through the open window, and shoot the plaintiff. Kurtz identified himself as a police officer and ordered the defendant to stop, but the defendant did not respond. According to Kurtz, the defendant then walked over to the plaintiff and shot him again as he was lying motionless on the ground.

Over the defendant's objection, the trial judge allowed John McCormick to testify as a witness for the plaintiff. McCormick relayed the particulars of an event involving the defendant that took place on July 5, 1980, six years prior to the occurrence in issue. According to McCormick, he was driving eastbound on the Stevenson Expressway in the far left lane when he was passed by the defendant, who was driving on the left shoulder of the roadway. McCormick testified that the defendant cut in front of him and slammed on his brakes several times before McCormick was forced to stop on the left shoulder of the roadway immediately behind the defendant's vehicle. McCormick exited his car and walked toward the defendant's vehicle, but the defendant pulled forward each time McCormick approached. When McCormick returned to his car, the defendant backed his vehicle into the front of McCormick's car. McCormick got out of his car and walked toward the defendant, but the defendant again pulled forward each time McCormick approached. The defendant then drove in reverse at a high rate of speed and again caused his vehicle to strike the front of McCormick's car, this time pushing McCormick's vehicle

from the shoulder of the roadway into the left lane of traffic. Thereafter, the defendant pulled his vehicle up to the place where McCormick was standing and displayed a gun.

The defendant's version of his 1980 encounter with McCormick differed substantially. According to the defendant, McCormick rear-ended his vehicle and thereafter collided with the defendant's vehicle several more times. When their vehicles later stopped along the shoulder of the road, the defendant testified that McCormick began throwing objects at his car and ran up to the door of his vehicle brandishing a knife.

At the close of all of the evidence, the jury received instructions on the plaintiff's claims of negligence and the defendant's affirmative defenses of contributory negligence and self-defense. The jury returned a verdict in favor of the plaintiff but reduced his damages by 25% for contributory negligence. The trial judge entered a $2,249,000 judgment against the defendant on the verdict. This appeal followed the denial of the defendant's posttrial motion seeking the entry of a judgment notwithstanding the verdict or, in the alternative, a new trial.

■ As a preliminary matter, we note that the defendant's appellate brief requests only that the judgment entered in this case be reversed and the cause remanded for a new trial. Consequently, having failed to address the propriety of the trial court's denial of his motion for the entry of a judgment notwithstanding the verdict, the defendant has waived the issue for review. 134 Ill. 2d R. 341(e)(7).

The defendant's claimed entitlement to a new trial is based solely upon the argument that the trial judge erred in admitting the testimony of McCormick. We are a bit unclear from the defendant's brief, however, whether he asserts that McCormick's testimony should have been excluded because it is wholly irrelevant or because its prejudicial effect substantially outweighed its probative worth. We will address each possible contention *seriatim*.

■ The law concerning the admissibility of a defendant's prior acts of misconduct in a criminal prosecution is fairly well established. Such evidence is inadmissible if introduced merely to establish the defendant's propensity to commit crime. *People v. Thingvold*, 145 Ill. 2d 441, 452, 584 N.E.2d 89 (1991); *People v. Wydra*, 265 Ill. App. 3d 597, 615, 637 N.E.2d 741 (1994). Propensity evidence is not rejected because it is irrelevant; "on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudice one with a bad general record and deny him a fair opportunity to defend against a particular charge." *Michelson v. United States*, 335 U.S. 469, 475-76, 93 L. Ed. 168, 174, 69 S. Ct. 213, 218 (1948). Evidence of the com-

mission of prior crimes or acts of misconduct may be admissible, however, if relevant to prove *modus operandi*, intent, identity, motive, absence of mistake, or any material question other than the propensity to commit crime. *Thingvold*, 145 Ill. 2d at 452; *People v. Stewart*, 105 Ill. 2d 22, 61, 473 N.E.2d 840 (1984). "The rule is one of inclusion. It authorizes the admission of a party's conduct that is extrinsic to the matter on trial for any relevant reason other than to prove the party's propensity to do the thing at issue." T. Mauet & W. Wolfson, Trial Evidence, at 103 (1997). Although not expressed in exactly the same terms, Illinois has long subscribed to a similar rule in civil cases. The admission of evidence of prior similar tortious or wrongful conduct to establish purpose, intent, motive, knowledge or other mental state of a party to a civil action forms an exception to the general rule that prohibits proof of one wrongful act by evidence of the commission of another such act. *Joseph Taylor Coal Co. v. Dawes*, 220 Ill. 145, 77 N.E. 131 (1906); see also *Wernowsky v. Economy Fire & Casualty Co.*, 106 Ill. 2d 49, 477 N.E.2d 231 (1985).

In this case, the defendant filed two affirmative defenses—contributory negligence and self-defense. It is the defendant's claim of self-defense that impacts upon our resolution of this appeal.

■ Illinois recognizes the doctrine of self-defense as a defense in both criminal and civil cases. *First Midwest Bank v. Denson*, 205 Ill. App. 3d 124, 129, 562 N.E.2d 1256 (1990). A defendant who raises a claim of self-defense must offer evidence in support of each of the following propositions: (1) force had been threatened against him; (2) he was not the aggressor; (3) the danger of harm was imminent; (4) the force threatened against him was unlawful; (5) he had an actual belief that (a) a danger existed, (b) force was necessary to avert the danger, and (c) the amount of force used was necessary; and (6) his belief was reasonable. *People v. Myles*, 257 Ill. App. 3d 872, 882, 629 N.E.2d 648 (1994). A person cannot claim self-defense, however, when the perilous situation he encounters arises out of his own aggressive conduct. *People v. Tillman*, 383 Ill. 560, 50 N.E.2d 751 (1943); *People v. Barnes*, 117 Ill. App. 3d 965, 453 N.E.2d 1371 (1983); *People v. Echoles*, 36 Ill. App. 3d 845, 344 N.E.2d 620 (1976). Although the vast majority of reported cases dealing with self-defense are criminal cases, they stand as persuasive authority in civil cases in which this affirmative defense is raised. *First Midwest Bank*, 205 Ill. App. 3d at 130; see also *Ewurs v. Pakenham*, 8 Ill. App. 3d 733, 290 N.E.2d 319 (1972).

■ By bringing his cause of action grounded in allegations of negligence, the plaintiff in this case obviated the need to plead or prove the defendant's motive or intent as he would have been obliged

to do had he chosen to seek recovery for a battery. See *Aetna Casualty & Surety Co. v. Freyer*, 89 Ill. App. 3d 617, 411 N.E.2d 1157 (1980); *Cowan v. Insurance Co. of North America*, 22 Ill. App. 3d 883, 318 N.E.2d 315 (1974). However, by pleading self-defense as an affirmative defense to the plaintiff's action, the defendant introduced his mental state as an issue in controversy, as self-defense necessarily involves the question of the defendant's subjective belief and intent at the time of the incident. We believe that McCormick's testimony of a prior incident involving the defendant, which was strikingly similar to the plaintiff's rendition of the events giving rise to this action, is relevant both to the issue of the defendant's state of mind and intent at the time that he shot the plaintiff, and to the question of whether the defendant introduced a gun into the confrontation as an instrument of self-defense or as an instrument of aggression. *People v. Tucker*, 176 Ill. App. 3d 209, 222, 530 N.E.2d 1079 (1988). The relevance of such evidence derives from the logic that it is far less likely that the defendant in this case was an innocent victim acting out of a belief that his safety was endangered if he was the aggressor in a prior incident under peculiarly similar circumstances. *People v. Charles*, 238 Ill. App. 3d 752, 763, 606 N.E.2d 603 (1992).

The fact that evidence of prior acts of misconduct may be relevant to prove something other than propensity does not mean that such evidence should be admitted as a matter of course. Trial judges must still determine whether the danger of "unfair prejudice" to the defendant "substantially" outweighs the probative value of the prior-act evidence. *People v. Illgen*, 145 Ill. 2d 353, 375-76, 583 N.E.2d 515 (1991); see also *Charles*, 238 Ill. App. 3d at 760-61. Such a determination is a matter committed to the sound discretion of the trial judge, and we will not reverse the court's resolution of the question absent a clear abuse of that discretion. *Illgen*, 145 Ill. 2d at 375.

Relevant evidence is excludable only if it is *unfairly* prejudicial. The question is one of "unfair" prejudice, not of prejudice alone, as virtually all evidence is prejudicial to the opposing party or it would not be material. "Unfair prejudice" is the capacity of relevant evidence to lead the fact finder to a decision on an improper basis such as "generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged." *Old Chief v. United States*, 519 U.S. 172, ___, 136 L. Ed. 2d 574, 588, 117 S. Ct. 644, 650 (1997). There is little doubt that evidence of prior acts of misconduct carries with it a risk of unfair prejudice, but this unfortunate consequence does not necessarily render such evidence inadmissible. *Illgen*, 145 Ill. 2d at 375. The evidence must still be evaluated to determine whether the risk of unfair preju-

dice *substantially* outweighs its probative worth. The task is one of balancing which cannot be resolved by resort to a mechanical process.

When otherwise relevant evidence is objected to on the grounds of unfair prejudice, the incremental probative value of the proffered evidence should be considered in light of the availability of other means of proof having the same or greater probative worth but a lower danger of unfair prejudice, along with other factors appropriate to such a determination in light of the type and character of the proffered evidence. See *Old Chief*, 519 U.S. at ___, 136 L. Ed. 2d at 590, 117 S. Ct. at 652. In the case of evidence of prior acts of misconduct, consideration should be given to the remoteness in time of the prior act and its resemblance to the incident in issue. *United States v. Fields*, 871 F.2d 188 (1st Cir. 1989).

■ The trial judge in this case was aware from the very outset of the trial that the defendant's mental state and intent were issues in controversy by reason of the defendant's having pled self-defense. At the time that the trial judge was called upon to rule on the defendant's motion to exclude McCormick's testimony, the jury had already heard the plaintiff and the defendant testify to conflicting versions of the events leading up to the shooting. In judging the credibility and weight to be given to the testimony of the parties, the jury was entitled to take into consideration their obvious interest in the outcome of the litigation. The plaintiff was able to bolster his case with the testimony of Kurtz, who corroborated the essentials of the plaintiff's version of the events that transpired at the scene of the shooting. However, Kurtz did not witness the initial confrontation between the parties and could not, therefore, shed any light on the question of who was the initial aggressor. McCormick's proffered testimony, although not immune from a charge of bias, enabled the jury to evaluate the testimony of the parties and, if believed, was highly probative of the defendant's state of mind and intent. Further, nothing in the record before us indicates that the plaintiff had at his disposal any alternate means of disproving the defendant's claim that he was merely defending himself from an unprovoked attack by the plaintiff, which carried the same or greater probative worth than McCormick's prior-act testimony. In arriving at this conclusion, we are not unmindful that Quillin subsequently corroborated the plaintiff's testimony; but, by reason of his friendship with the plaintiff, Quillin's testimony was subject to a legitimate credibility attack on the grounds of bias.

■ The defendant also argues that McCormick's testimony lacked probative value because the incident that he recounted was too

remote in time from the events in issue. No doubt, if prior acts are too remote, their probative value is weakened, especially in cases in which such evidence goes to the issue of intent. *Fields*, 871 F.2d at 198. Nevertheless, the admissibility of prior-acts evidence cannot be controlled solely by the number of years that have elapsed between the prior-act and the events in issue. The question of whether to exclude such evidence on the grounds of remoteness must be made on a case-by-case basis. *Illgen*, 145 Ill. 2d at 370. The degree to which the passage of time diminishes the probative value of prior-acts evidence cannot be calculated without reference to the purpose for which the evidence is proffered and the similarity between the prior act and the event in issue.

When, as in this case, evidence of prior misconduct is relevant to the issue of a defendant's state of mind or intent, the prior conduct must be similar to the conduct in issue. *People v. Bartall*, 98 Ill. 2d 294, 456 N.E.2d 59 (1983). It follows then that the greater the similarity, the greater the probative worth. McCormick's testimony relating to his encounter with the defendant was not only similar to the plaintiff's version of the defendant's actions in this case, it was virtually identical save for the end result—the defendant only displayed a gun after menacing McCormick with his vehicle, whereas, in this case, the defendant shot the plaintiff. Because the defendant's behavior as testified to by the plaintiff and McCormick's rendition of the events that transpired during his encounter with the defendant were so similar, we do not believe that the passage of six years between these two idiosyncratic incidents appreciably diminished the probative value of McCormick's testimony.

Trial judges rule on the admissibility of evidence based upon what is then before the court. On review, our function is to place ourselves in the position of the trial judge at the time of such a ruling to determine if the judge abused his discretion. From that perspective, we find no abuse of discretion in this case. However, even from the position of hindsight, we believe that the relevance of McCormick's proffered testimony was readily apparent and that the risk of unfair prejudice to the defendant was minimal in comparison to its probative worth.

Affirmed.

HARTMAN and THEIS, JJ., concur.