THIRD DIVISION
June 18, 2008

No. 1-06-1601

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| | ) | the Circuit Court |
| Plaintiff-Appellant, | ) | of Cook County. |
| | ) | |
| v. | ) | No. 03 CR 1915 |
| | ) | |
| ANDRE HOLMES, | ) | Honorable |
| | ) | Marcus R. Salone, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE THEIS delivered the opinion of the court:

The State appeals from the denial of its motion to reconsider an order excluding evidence of defendant's prior convictions in a sexual assault case.[1] The State argues that (1) the trial court erred as a matter of law because it concluded that the prior convictions were *per se* inadmissible to show propensity, in contravention of section 115-7.3 of the Code of Criminal Procedure of 1963 (the Code) (725 ILCS 5/115-7.3 (West 2004)); and (2) the trial court abused its discretion in refusing to admit the prior convictions. For the following reasons, we affirm in part and reverse in part and remand for further proceedings.

---

[1] It should be noted that this case was fully briefed and ready for disposition on May 10, 2007. The case was assigned to another division at that time, where it remained until it was reassigned to this panel on April 1, 2008.

Defendant was charged by indictment with nine counts of aggravated criminal sexual assault (720 ILCS 5/12-14(a)(1), (a)(2), (a)(3) (West 2004)) and three counts of criminal sexual assault (720 ILCS 5/12-13(a)(1) (West 2004)) in connection with an attack that occurred on December 28, 2002. The State indicated that if defendant was convicted, it would seek to have him imprisoned for natural life pursuant to section 5-8-1(a)(2) of the Unified Code of Corrections (730 ILCS 5/5-8-1(a)(2) (West 2004)) and article 33B of the Code (720 ILCS 5/33B-1 *et seq.* (West 2004)).

The details of the assault were taken from the parties' filings and transcripts of the hearings. Defendant and J.B. were former high school classmates. They arranged to meet each other at about 3:30 p.m. on December 28, 2002, while defendant was in town for the holidays. J.B. alleged that she drove to the home of defendant's aunt and the two sat in her car and talked. During their conversation, J.B. told defendant that she did not want to have a romantic relationship with him.

At that point, J.B. alleged, defendant became "enraged." He grabbed her by the neck and began to punch and choke her. He then ordered her to take off her clothes and move to the backseat of the car. He pushed her onto the floor, threatened her with a knife, and raped her. Following the attack, defendant drove J.B. to his father's house. He told her that he wanted her to meet his father and tell him that they were getting married. Defendant again brandished the knife and threatened to kill her if she disobeyed him. Sometime later, defendant let J.B. leave.

After she left, she immediately drove to a police station, reported that she had been sexually assaulted by defendant, and was taken to the hospital. The physician determined that she suffered multiple contusions and abrasions, consistent with being beaten, and vaginal tears,

consistent with sexual assault. The police arrested defendant the next day and J.B. identified him in a lineup as her assailant. Additionally, the DNA evidence recovered after her assault matched defendant's.

In the course of the prosecution, the State filed a motion to admit evidence of other sexual offenses that defendant had committed for the purpose of showing his propensity to commit sexual assault, pursuant to section 115-7.3 of the Code, or to prove intent, motive, or lack of consent under the common law rules of admissibility. Specifically, the State sought to introduce evidence of two of defendant's prior convictions for similar sexual assaults in Louisiana and the victims' testimony in those cases.

Defendant's first conviction occurred in 1994. He and the victim, K.S., had been dating for three years and had been living together in defendant's mother's home. Eventually, K.S. ended the relationship and moved out of the home. Defendant called K.S. repeatedly, urging her to reconcile with him and telling her he could not live without her. As K.S. was on her way to work a few days later, defendant approached her, wielding what he said was a gun wrapped inside a shirt. He punched her in the stomach, pushed her into her car, and drove her to his mother's house.

While defendant and K.S. were in his bedroom, defendant's mother entered the room to check on them. K.S. tried to signal that she was in distress, but was unable to communicate that to defendant's mother before she left the room. Defendant then displayed a kitchen knife, pushed K.S. onto the bed, and raped her. After K.S. left the room, defendant's mother saw that she was injured and crying. K.S. told defendant's mother what happened, and they called the police. K.S. made a police report and was treated for her injuries at the hospital. Although

defendant argued that K.S. consented to having sex with him, he pled guilty to a reduced charge of sexual battery and was sentenced to five years' probation.

The second conviction occurred in 1996. Defendant, then age 30, had been dating A.S., then age 17, for three months when he attempted to sexually assault her. A.S. and her cousin were at defendant's house. Defendant invited A.S. into the bedroom intending to become intimate with her. They began kissing but A.S. resisted when defendant climbed on top of her and began to initiate intercourse with her. He then forced her hands behind her back, covered her mouth, and threatened to kill her if she said anything. As defendant started to remove his pants, A.S. bit and scratched defendant. She kicked a dresser in an effort to get her cousin's attention. After several minutes, her cousin came to the door and she was able to escape from defendant. A.S. went to the police and reported the attempted rape and defendant was later arrested. He pled guilty to attempted forcible rape, along with several other unrelated charges, and was sentenced to five years' imprisonment.

The State argued that the convictions were admissible under section 115-7.3 because (1) excluding the time that defendant was in prison, all three assaults occurred within a relatively short span of time; (2) the details of each assault or attempted assault were similar; and (3) other crimes evidence is relevant to rebut a consent defense, which defendant likely would assert in this case.

In response, defendant argued that admitting his prior convictions would be unduly prejudicial and of minimal, if any, probative value. The incidents occurred too far apart in time to bear any relevance to the present case and, moreover, the circumstances of each case varied widely. Specifically, defendant and K.S. were involved in a long-term relationship before the

4

assault and have since married and divorced. In fact, they were involved in a contentious child custody dispute, which defense counsel suggested would influence her testimony in this case. In the case of A.S., not only was there no sexual penetration, but that conviction was part of a plea deal that resolved outstanding charges against defendant, unrelated to the assault on A.S.

Additionally, at the hearing on the motion, defense counsel claimed that J.B. "had a previous false outcry of rape against a Cleveland Browns NFL football player" from whom she was currently receiving child support payments. The court then addressed counsel's allegation.

"THE COURT: Wait a minute, wait a minute. It's a false allegation of rape against someone who settled? Is that what you said?

DEFENSE: We have records – again, Judge, I'm just getting up to speed on this case.

PROSECUTION: That's interesting because we have no discovery from the defense yet, so they have the records, we don't.

DEFENSE: There's some type of civil settlement for child support through this NFL football player. I don't know what [the State] has or doesn't have, it doesn't matter."

On June 10, 2004, the trial court denied the State's motion to admit the other crimes evidence and provided the following rationale:

"It is alleged that at the time of the attack against [K.S.] the defendant threatened to be in possession of a handgun; it is also alleged that he did brandish a knife there and these are all allegations; the defendant was supposed to have punched [K.S.] and pushed her into her

own vehicle. In the case before us there's no suggestion of a knife being brandished or threatened and [the] complaining witness in this matter complains of having been choked. [K.S.] was taken to the home of the defendant's mother. In our 2003 case[,] it's alleged that that complainant was taken to the defendant's father's home. And in the case of [A.S.] which occurred in [19]96, there is a resolution of that case by conviction to the charge of attempt[ed] forcible rape, there was no sex act consummated in that matter.

I believe that the passing of the nine years between the [19]94 case and the case that brings us here is such that any evidence in that regard should be barred and so ordered and there is no similarity between the [19]96 case where [A.S.] was the complaining witness and the matter that brings us here today. Both matters will be barred."

Approximately three months later, defendant filed a motion for additional discovery, specifically requesting the location and dates of any reports of assault, sexual assault, battery, or rape made by J.B. in Illinois, Ohio, or elsewhere, where she was a witness or the victim. The State filed a supplemental answer to discovery wherein J.B. disclosed that "there has been only one previous incident" in which she has made a police report alleging any of those crimes. At some time between 1989 and 1992, her boyfriend at the time, D.C., punched her in the face during an argument. She made the police report in Cleveland Heights, Ohio. D.C. was arrested and she later appeared in court on the matter, but the case was never called. She ended her relationship with D.C. and did not pursue the criminal matter further.

6

However, in early 2006, defendant produced what the State described as "new discovery [that] shows that in 1995 the present victim [J.B.] reported a crime of rape. The victim became pregnant from the rape and had the baby. The victim currently collects child support from the man she accused of rape." Defendant intended to cross-examine J.B. with that evidence, prompting the State to file a motion to reconsider the order excluding evidence of defendant's other crimes or, alternatively, to bar admission of defendant's "new discovery." The State argued that admitting defendant's "new discovery" without permitting it to introduce evidence of defendant's previous sexual offenses would be "outrageously prejudicial" to the State and substantially impair its prosecution.

At the hearing on May 30, 2006, the assistant State's Attorney reiterated its previous arguments that the prior convictions were close in time, similar in circumstance, and admissible to rebut a defense of consent. Additionally, she argued that it would be a distortion of the facts to allow the jury to believe that J.B. may have consented to sex with defendant, while there was other evidence demonstrating that defendant had a pattern of threatening women to engage in non-consensual sex. On the other hand, if the convictions would not be admitted to show propensity, they should be admitted to show intent, motive, and lack of consent. If the prior convictions were not admitted at all, then the court should bar the "new discovery" from being admitted as well.

Defense counsel replied that she produced the 1995 police report to the State several months earlier, disclosing her intent to impeach J.B. with it. She argued that defendant's prior crimes would not be relevant to rehabilitate J.B.'s credibility, and thus, the other crimes evidence should not be admitted. Furthermore, the convictions should only be used to show intent,

7

motive, and lack of consent to impeach defendant after he testifies, if he testifies, subject to the standard set forth in People v. Montgomery, 47 Ill. 2d 510, 268 N.E.2d 695 (1971).

The court denied the State's motion to reconsider, stating:

> "[W]hen the layperson hears propensity it begins to snowball to something larger than propensity, to almost proof of the crime, which I believe is inherently against the presumption of innocence. *** And while certainly I do not want to see a serial rapist free to carry on his twisted and sorted [sic] acts, Mr. Holmes stands before me presumed to be not guilty and I take that quite seriously."

Moreover, the court found that the "new discovery" may be a proper issue on which to cross-examine J.B. Whether defendant's prior convictions may be used to impeach defendant after he testified would be addressed as the trial proceeded.

The State then filed a certificate of substantial impairment, claiming that without evidence of defendant's other crimes, it could not proceed in prosecuting him, and appealed the court's ruling under Supreme Court Rule 604(a). 210 Ill. 2d 604(a).

On appeal, the State argues that the trial court erred as a matter of law in denying the motion to reconsider because, based on the statements made at the hearing, the court effectively ruled that defendant's prior convictions were *per se* inadmissible to prove propensity. Moreover, the State maintains that the court abused its discretion in determining the admissibility of the other crimes evidence for propensity under the factors set forth in section 115-7.3(c) of the Code.

8

Finally, the State argues that the court abused its discretion in failing to admit the prior convictions to prove intent, motive, or lack of consent.

Defendant responds that this court has no jurisdiction over the appeal because the State failed to appeal from the original suppression order within 30 days of its entry on June 10, 2004. Additionally, the State was precluded from seeking reconsideration of the suppression order based on the holding in People v. Taylor, 50 Ill. 2d 136, 277 N.E.2d 878 (1971) (the Taylor rule). Thus, defendant maintains that the trial court's order on the motion to reconsider was entered without jurisdiction and any appeal from that order also lacks a legitimate jurisdictional basis. Defendant first made these arguments in a motion to dismiss this appeal, which we denied, and now reasserts the same arguments in its response brief. Defendant also argues that the trial court did not abuse its discretion in suppressing his prior convictions.

We first address the jurisdictional issue. The State appealed under Rule 604(a)(1), which permits interlocutory appeal by the State of an order "the substantive effect of which results in *** suppressing evidence." 210 Ill. 2d R. 604(a)(1). There is no dispute that the substantive effect of the court's 2004 order excluding the other crimes evidence, and denial of the motion to reconsider that order in 2006, is the proper subject matter of a Rule 604(a)(1) appeal. The dispute is over the timing of the appeal.

Generally, a court's ruling on a motion *in limine* is interlocutory and is subject to review by the trial court anytime before or during trial. People v. Hansen, 327 Ill. App. 3d 1012, 1027, 765 N.E.2d 1033, 1046 (2002). However, unlike an ordinary motion *in limine*, a Rule 604(a)(1) appeal is governed by the Taylor rule, which provides that if an order may be appealed under Rule 604(a)(1), it must be appealed or reconsideration sought within 30 days of entry of that

order, or the State loses the ability to seek review. People v. Williams, 138 Ill. 2d 377, 389, 563 N.E.2d 385, 390 (1990) (comparing the Taylor rule to the doctrines of *res judicata* and law of the case). Notwithstanding this limitation, if the facts before the court change materially from the time the order was entered, and "the new evidence [is not] of a nature that with due diligence could have been presented" at the time of filing the earlier motion, then the court may correct its ruling in light of those newly presented facts. Williams, 138 Ill. 2d at 394, 563 N.E.2d at 392.

The State argues that the "new discovery," indicating that J.B. had falsely accused a man of rape before agreeing to accept child support payments for the baby born of that rape, was a new and material change in the facts that permitted the trial court to reconsider its ruling on the suppression order. We disagree.

As defendant correctly notes, at the 2004 hearing, defense counsel stated in open court that there were documents to support the allegation that J.B. "had a previous false outcry of rape against a Cleveland Browns NFL football player" from whom she was currently receiving child support payments, and the court engaged counsel's assertion. Although it is undisputed that defendant had not yet tendered any documentary evidence to the State in support of that claim, defense counsel merely made the same type of proffer that the State's Attorney made in arguing for the admissibility of the other crimes evidence. The court was or was not persuaded by defendant's argument based on the offer of proof, but it was indeed presented.

Moreover, regardless of whether the State actually possessed the police report at the time of the hearing, from that moment on, the State was on notice of the potential credibility issue it now claims is fatal to its case. The State had every opportunity to verify that allegation when it interviewed J.B. following defendant's request for supplemental discovery. Nevertheless, if

10

defendant's "new discovery" is damaging to the State's case now, it would have been equally damaging to the State's case in 2004, and the State should have sought reconsideration at that time. The fact that the police report was physically produced two years after defendant disclosed its contents does not make the information contained in it, or the allegations arising from it, "new" for the purposes of seeking reconsideration under the Taylor rule.

In essence, the State's motion to reconsider simply argued a new legal theory from facts that were before the court in 2004, which, as the State acknowledged in its response to the motion to dismiss and at oral argument, is prohibited by the Taylor rule. Williams, 138 Ill. 2d at 388, 563 N.E.2d at 390, quoting People v. Shlensky, 118 Ill. App. 3d 243, 246, 454 N.E.2d 1103, 1105 (1983) (adopting the trial court's observation that when the State does not prevail in litigation, it " 'cannot thereafter retrace its steps, prowl back into the litigation, pull out separate issues not referred to by a Judge in observations made at the time of rendering judgment and upon these selected issues build a new indictment.' "). Accordingly, we find that the production of the police report in support of the accusation that J.B. made a prior false allegation of rape is not a new event sufficient to trigger the court's ability to reconsider the suppression order two years later.

With that said, our review of the record reveals that a new fact did arise after the 2004 hearing that was relevant to the court's analysis of whether to admit defendant's prior convictions. We preface this analysis with a brief review of the unique progression of this case. The State moved for reconsideration in light of "new discovery" suggesting that J.B. made a prior false allegation of rape, which evidence was produced by defendant. As we have

11

discussed, that evidence was not new because defendant presented it in the form of an offer of proof while arguing against the original motion in 2004.

However, several months later, defendant filed a motion for specific additional discovery seeking disclosure of any previous reports of assault, sexual assault, battery, or rape, made by the victim in which she was named as the complaining witness or victim in such crimes that may have occurred in Illinois or Ohio specifically. After an interview between the assistant State's Attorney, its investigator, and J.B. on October 8, 2004, the State filed a supplemental answer to discovery in which J.B. stated that "there has been only one previous incident where she has been a victim, listed on a police report, or in a criminal case, for the offenses of assault, sexual assault, battery or rape," the incident involving D.C. Nevertheless, in early 2006, defendant produced the police report showing that J.B. made a prior allegation of rape in Cleveland, Ohio, in 1995, despite her denial to the assistant State's Attorney.

This new development is material to the analysis of whether to admit evidence of defendant's other crimes. The victim's failure to disclose a prior report of sexual assault, even after defendant filed supplemental discovery to uncover it, is relevant to her motive and bias in making the current allegation against defendant, which in turn affects the analysis of whether the prejudicial effect of defendant's prior convictions outweighs their probative value. Thus, in the interests of judicial economy and pursuant to our powers under Rule 366(a)(5) (134 Ill. 2d R. 366(a)(5)), we shall address the propriety of the court's 2004 order excluding evidence of defendant's other crimes in light of the undisputed facts and in light of this new development. See People v. Childress, 338 Ill. App. 3d 540, 552, 789 N.E.2d 330, 340 (2003).

The State sought to admit two of defendant's prior convictions for sexual battery and attempted forcible rape to prove that he had a propensity to commit sexual offenses under section 115-7.3. The key to balancing the probative value of other crimes evidence to prove propensity against its possible prejudicial effect is to avoid admitting evidence that entices a jury to find defendant guilty "*only* because it feels he is a bad person deserving punishment." (Emphasis in original.) Childress, 338 Ill. App. 3d at 548, 789 N.E.2d at 337, citing People v. Lima, 328 Ill. App. 3d 84, 96, 765 N.E.2d 64, 76 (2002). Propensity evidence is not rejected because it is irrelevant; on the contrary, it tends to be overly persuasive to the point of being prejudicial by denying defendant an opportunity to defend against the particular charge for which he is on trial. Childress, 338 Ill. App. 3d at 548, 789 N.E.2d at 337, quoting Thompson v. Petit, 294 Ill. App. 3d 1029, 1034, 691 N.E.2d 860, 864 (1998).

Notwithstanding the "clear risk of prejudice" in admitting other crimes evidence, there are certain well-established exceptions to the rule. People v. Romero, 66 Ill. 2d 325, 330, 362 N.E.2d 288, 290 (1977). In sexual assault cases, the exception derives from the measured judgment of the General Assembly, which permits other crimes evidence to be "considered for its bearing on any matter to which it is relevant," including propensity. 725 ILCS 4/115-7.3(b) (West 2004); People v. Donoho, 204 Ill. 2d 159, 173-74, 177, 788 N.E.2d 707, 716-17, 718 (2003).

Section 115-7.3 offers guidance in weighing the potential prejudice against the inherently probative value of the other crimes evidence. The first factor to consider is the proximity in time of the prior crimes and the current offense. 725 ILCS 5/115-7.3(c)(1) (West 2004). There is no bright-line test to determine when prior convictions are too distant in time to be relevant; rather,

they should be evaluated on a case-by-case basis. Donoho, 204 Ill. 2d at 183-84, 788 N.E.2d at 722. In certain circumstances, a 20-year-old conviction may be admissible. Donoho, 204 Ill. 2d at 183-84, 788 N.E.2d at 722, citing People v. Davis, 260 Ill. App. 3d 176, 192, 631 N.E.2d 392, 404 (1994).

Second, the other crimes evidence must exhibit some " 'threshold similarity' " to the current offense to be admissible. Donoho, 204 Ill. 2d at 184, 788 N.E.2d at 722, quoting People v. Bartall, 98 Ill. 2d 294, 310, 456 N.E.2d 59, 66 (1983); 725 ILCS 5/115-7.3(c)(2) (West 2004). Although the proponent of the evidence need only show some " 'general areas of similarity' " for it to be admissible, the more similar the offenses are, the greater the probative value of the other crimes evidence. Donoho, 204 Ill. 2d at 184, 788 N.E.2d at 722-23, quoting People v. Illgen, 145 Ill. 2d 353, 373, 583 N.E.2d 515, 523 (1991).

Third, the court may consider any other relevant facts or circumstances that affect the analysis. 725 ILCS 5/115-7.3(c)(3) (West 2004). Ultimately, however, the court must consider these three factors in such a way that allows section 115-7.3 to operate as the legislature intended, which is to permit the State to use evidence of a defendant's other sexual assault crimes as proof of his propensity to commit the crime for which he is charged. Childress, 338 Ill. App. 3d at 554, 789 N.E.2d at 342.

We review a court's decision on the admissibility of prior convictions to prove propensity for an abuse of discretion. Childress, 338 Ill. App. 3d at 545, 789 N.E.2d at 334. That is, we will reverse the court's decision if it is arbitrary, fanciful, or where no reasonable person would take the view it adopted. Childress, 338 Ill. App. 3d at 545, 789 N.E.2d at 334. In reviewing the existing facts, together with the newly presented fact that J.B. failed to disclose

1-06-1601

her previous rape complaint, we find that the conviction for sexual battery involving K.S. is admissible, but the conviction for attempted forcible rape involving A.S. is not.

The sexual battery conviction occurred in 1994, nearly nine years before the present assault, in absolute terms. However, defendant was incarcerated from 1996 until 2001. The State urges us to exclude the time of incarceration in calculating the remoteness in time, citing Childress, 338 Ill. App. 3d at 553, 789 N.E.2d at 340. See also People v. Grengler, 247 Ill. App. 3d 1006, 1014, 617 N.E.2d 486, 492 (1993). Defendant responds that the Childress court did not exclude the length of incarceration when suppressing the defendant's other conviction and we should not do so here. However, regardless of whether the conviction occurred three years ago or nine years ago, as the trial court found, it occurred within an acceptable span of time between a prior conviction and a present crime. See Illgen, 145 Ill. 2d at 371-72, 583 N.E.2d at 523 (showing the time elapsed between an admitted prior conviction and the crime charged in various cases). Thus, the circuit court erred in concluding that it was too remote.

As to the second factor, the assault on K.S. bore a number of similarities to the allegations made by J.B. in this case. First, both victims were women known to defendant who rejected advances by him. He expressed interest in having or continuing a relationship with them, and when they refused, he allegedly raped them. Second, both assaults occurred in broad daylight. Third, defendant punched both victims to immobilize them before proceeding with the assault. Fourth, they were both assaulted at knife point.[2] Fifth, defendant brought the victims to

---

[2] We note for the record the circuit court's misapprehension of the facts in comparing the sexual battery conviction to the present case. At the 2004 hearing, the court stated that "in the case before us [involving J.B.] there's no suggestion of a knife being brandished or threatened

15

his parents' homes during or after the attack. Sixth, in both cases, he claimed that the women consented to having sex with him. Seventh, medical documentation supported the women's claims of physical assault and sexual trauma. Despite the considerations raised by defendant, there are more than enough similarities between these attacks to make the 1994 conviction sufficiently probative, and no reasonable person could conclude otherwise. Therefore, the court abused its discretion in concluding that the attacks were dissimilar.

Finally, the new evidence of the victim's failure to disclose the prior report of rape is a relevant circumstance that must be considered. In evaluating the conviction's probative value versus its potential prejudicial effect, this new fact holds sway in diminishing any prejudice to defendant. The purpose of performing a meaningful assessment of the probative value and prejudicial effect of other crimes evidence is to reduce the likelihood that the defendant will be convicted simply because he is a bad person deserving of punishment and to ensure that he has an opportunity to defend against the crime for which he is currently being tried. Childress, 338 Ill. App. 3d at 548, 789 N.E.2d at 337; Donoho, 204 Ill. 2d at 186, 788 N.E.2d at 724. That the victim denied making a prior report of rape, after specifically being asked about it, calls into question her motive and bias in claiming that defendant assaulted her and potentially may discredit her testimony entirely. This new fact raises a critical question of the accuser's credibility that should most appropriately be resolved by the jury. It is highly probative and it diminishes the prejudicial effect of the 1994 conviction for sexual battery. Therefore, evidence

and complaining witness in this matter complained of having been choked." However, the State has indicated, and defendant does not dispute, that J.B. was threatened with a knife. Additionally, J.B. reported having been punched and choked during the attack.

of defendant's 1994 conviction is admissible for purposes of showing propensity pursuant to section 115-7.3. Accordingly, we need not address whether the court erred as a matter of law in *per se* rejecting the other crimes evidence for propensity purposes at the 2006 hearing.

At oral argument, defendant suggested that admitting his prior convictions as a reaction to his evidence that discredits the victim would be an improper "leveling of the playing field" between the parties. However, that appears to be precisely the goal of balancing prejudice and probative value. There can be no suggestion that other crimes evidence is not probative; indeed, it is overwhelmingly so. Donoho, 204 Ill. 2d at 170, 788 N.E.2d at 714. Thus, if the risk that a jury would convict defendant based only upon his past actions has been sufficiently diminished, then the evidence may be admitted. Where, as here, there is evidence that the accuser lied to the prosecution, her motive and bias are in question, a fact that is critical to a jury's determination of defendant's guilt in this particular case. As a consequence, the potential prejudice to him is diminished.

Defendant also argued that introducing evidence of defendant's other crimes to bolster the credibility of a prosecution witness is impermissible, citing People v. Thingvold, 145 Ill. 2d 441, 459, 584 N.E.2d 89, 97 (1991). However, that case is inapplicable here. In Thingvold, where the defendant was on trial for solicitation of murder, the court prevented the State from introducing evidence of the victim's murder solely for the purpose of bolstering the credibility of the State's key witness, the man hired to kill the victim. The prejudicial effect of admitting that evidence outweighed its probative value, if any, where (1) the State admitted that it could not prove that the defendant physically committed the murder and, therefore, it was not evidence of any other crime that the defendant committed; and (2) the credibility of the State's witness was

not a material issue in the case, as a defendant's motive, intent, state of mind, or *modus operandi* might be. Thingvold, 145 Ill. 2d at 460, 584 N.E.2d at 97.

However, other crimes evidence is treated differently in sexual assault cases. To the extent that the defendant has asserted a consent defense, such evidence does address material issues: it is evidence of the defendant's intent and state of mind to refute his claim of a consensual sexual encounter. People v. Boyd, 366 Ill. App. 3d 84, 91-92, 851 N.E.2d 827, 835-36 (2006) (citing several other cases in which other crimes evidence was admissible to show lack of innocent intent as a rebuttal to a consent defense in a sexual assault case). Of course, the probative value still must outweigh the prejudicial effect. We have already established that the probative value of the sexual battery conviction outweighs any prejudicial effect; therefore, the 1994 conviction also is admissible for the traditional common law purposes of intent and state of mind. Any effect the prior conviction has in bolstering the victim's credibility is secondary.

As to the 1996 conviction for attempted forcible rape, the prejudicial effect of that conviction precludes its admission. Although it may be said that the assault on A.S. occurred as few as 20 months before the present assault, excluding defendant's incarceration, the details of that assault are not similar to the present one. First, there was a second person, A.S.'s cousin, present in the apartment at the time she was attacked. Second, A.S. went with defendant into his bedroom and voluntarily engaged in some level of intimacy, until she was no longer comfortable and resisted. Third, defendant did not threaten A.S. with any weapon. Fourth, A.S. escaped from defendant, whereas J.B. was allowed to leave. Fifth, although the assault may have progressed had A.S. not escaped, there was no actual penetration. The attacks do not share enough general similarities to make the 1996 conviction sufficiently probative.

Finally, the conviction and sentence for this offense were part of a plea deal that included other unrelated crimes. On balance, admitting this conviction would be more prejudicial than probative. Therefore, the 1996 conviction for attempted forcible rape was properly excluded.

Accordingly, we affirm that part of the court's order excluding evidence of defendant's 1996 conviction for attempted forcible rape, but reverse the court's decision to exclude evidence of the 1994 conviction for sexual battery. We remand this matter for further proceedings consistent with this opinion.

Affirmed in part and reversed in part; cause remanded.

GREIMAN, J., concurs.

JUSTICE CUNNINGHAM, dissenting:

I would deny the State's appeal on jurisdictional grounds, and therefore I respectfully dissent.

As a reviewing court, we have a duty to determine whether we have jurisdiction on appeal. People v. Smith, No. 104468, slip op. at 8 (Ill. February 22, 2008). The majority correctly finds that ordinarily we would have no jurisdiction to consider the State's appeal because the State failed to appeal the original suppression order within the required 30-day period. People v. Taylor, 50 Ill. 2d 136, 139-140, 277 N.E.2d 878, 880-881 (1971). There is an exception to this jurisdictional bar based on newly presented facts, if those facts represent a material change and if they could not have been previously discovered with due diligence. People v. Williams, 138 Ill. 2d 377, 392, 563 N.E.2d 385, 394 . I agree with the majority that this exception cannot be applied to the defense revelation that the victim had previously made a rape accusation (labeled as "false" by the defense) against a Cleveland Browns football player,

who subsequently made child support payments to her. Those facts, or accusations, were disclosed in open court by the defense during the initial pre-trial hearing. What I cannot agree with is the majority's use of that same rape accusation as a basis for invoking the exception, merely because in subsequent discovery the State effectively denied that this had occurred and the defendant then produced a police report indicating that there *had* been a rape outcry. What the majority seems to overlook is that we are still concerned with an incident which had been revealed earlier. I cannot see how the production of a police report *by the defense*, which could have been readily obtained by the State, can be said to represent a material change in the facts or a matter which due diligence by the State would not have previously disclosed. The "new fact" which the majority claims is revealed upon its review of the record, thereby allowing the State a second bite of the apple, is not new at all. The majority does not even address the issue of due diligence by the State as to this police report, which is at the crux of the State's rationale for seeking to invoke the jurisdictional exception.

The State's motion asking that the trial court reconsider its ruling on the prior crimes evidence came nearly two years too late. The *same* trial judge evaluated the *original evidence* in the first hearing and the "new" evidence in the second hearing, so the judge clearly had a solid foundation for his use of discretion. It is also noteworthy that that this evidence of the rape outcry and the subsequent payment of child support by the accused, which clearly involves prior sexual conduct by the victim, would in all likelihood be barred under the rape shield statute at the time of trial. 725 ILCS 5/115-7(a) (West 2004). The statute provides that in prosecutions for criminal sexual assault, evidence of the past sexual conduct of the victim is barred unless that evidence either relates to sexual conduct with the defendant to bolster the defendant's claim of

consent or would be constitutionally required to be admitted. Our supreme court has made clear that the latter exception does not apply to evidence of prior sexual activity with a third party when that evidence will be used to impeach the victim as to truthfulness. People v. Santos, 211 Ill. 2d 395, 403-409, 813 N.E.2d 159, 163-66 (2004). Thus, all of the machinations by the State and its argument regarding "leveling of the playing field" would be for naught. The defendant will in all likelihood find that none of this information regarding the victim's prior sexual activity with third parties is available to him in putting on a defense. Likewise, the State should be required to prove its case without the use of the unrelated evidence which the trial court properly barred. Accordingly, I would find that we lack jurisdiction to hear this case and therefore we should dismiss this appeal.

Because of this determination, I would not reach the substantive issue of the admissibility of the prior crimes evidence. But I would just note that the State is not only seeking to reopen an issue which it is clearly barred from reopening, it is also using the alleged mendacity of its primary witness as an illogical excuse for introducing potentially devastating evidence of other crimes. It makes a mockery of the abuse of discretion standard for this court to hold that the trial court abused its discretion in barring one of the defendant's prior crimes. When the State's actions are analyzed, this becomes clear. The State failed in its attempt to introduce other crimes evidence against the defendant and the State chose not to appeal that ruling. Only when it became clear to the State that the defense had documentation of the previously-revealed rape outcry by the victim against a professional football player did the State then seek to bar that evidence by renewing its motion to introduce evidence of other crimes. In argument before the trial court the State made its plan clear. The assistant State's Attorney told the court that if the

22

prior convictions were not allowed into evidence then the defendant's "new discovery" should also be barred. Thus the State in effect sought to force the exclusion of evidence damaging to its case by threatening to obtain the introduction of the previously barred other crimes evidence. The trial court declined to participate in this scheme and this court should affirm the trial court's ruling, which is clearly consistent with established case law and holds the State accountable for following the law.

Accordingly, I would dismiss this appeal for lack of jurisdiction.

THE PEOPLE OF THE STATE OF ILLINOIS,

        Plaintiff-Appellant,

v.

ANDRE HOLMES,

        Defendant-Appellee.

## No. 1-06-1601

**Appellate Court of Illinois**
**First District, Third Division**

**Filed: June 18, 2008**

### JUSTICE THEIS delivered the opinion of the court.

Greiman, J., concurs.
Cunningham, J., dissents.

Appeal from the Circuit Court of Cook County
Honorable Marcus R. Salone, Judge Presiding

<table>
<tr><td>For PLAINTIFF-<br>APPELLANT</td><td>Richard A. Devine, State's Attorney<br>James E. Fitzgerald, Assistant State's Attorney<br>Mary L. Boland, Assistant State's Attorney<br>Jessica Pipersburgh, Assistant State's Attorney<br>300 Richard J. Daley Center<br>Chicago, IL 60602</td></tr>
<tr><td>For DEFENDANT-<br>APPELLEE</td><td>Edwin A. Burnette, Public Defender<br>Eileen T. Pahl, Assistant Public Defender<br>69 West Washington Street<br>15th Floor<br>Chicago, IL 60602</td></tr>
</table>